McGinley v. Forrest.

---

WILLIAM J. MCGINLEY, APPELLANT, V. MARTHA FORREST, APPELLEE.

FILED DECEMBER 21, 1921. No. 21763.

Vendor and Purchaser: DESTRUCTION OF BUILDINGS: LIABILITY. Where a contract for the sale of land is entered into containing no express provision as to who should bear the loss in case of the destruction of the buildings thereon, or that the vendor should deliver the land with the buildings thereon in the same situation as when the contract was made, or words of similar import, and the buildings on the land, through no fault of either party, are accidentally destroyed by fire pending the contract and before conveyance, the vendor having at the time of the sale a fee simple title and there being no default on the part of the purchaser, the loss in equity will fall upon the purchaser, he being regarded as the real owner.

APPEAL from the district court for Lancaster county: WILLIAM M. MORNING, JUDGE. *Affirmed.*

*Claude S. Wilson* and *Albert S. Johnston,* for appellant.

*C. C. Flansburg, contra.*

Heard before LETTON, DEAN and DAY, JJ., CORCORAN and GOSS, District Judges.

DAY, J.

This is an action for specific performance of an executory contract for the sale of certain lands, brought by the assignee of the purchaser against the vendor. The plaintiff prayed for a decree of specific performance, with an abatement of the purchase price to the extent of the value of a house upon the premises, which had been destroyed by fire after the date of the contract. The plaintiff also prayed that, should specific performance with abatement from the purchase price be denied, the defendant be decreed to return to the plaintiff the purchase money which had theretofore been paid upon the contract. The trial court entered a decree for the plaintiff for specific performance, and allowed him an abatement of the purchase price to the extent of the insurance money which the defendant had collected. From this judgment the plaintiff appeals. He now asks that this court, upon a trial *de novo,* grant specific performance of the contract, and that it decree the loss occasioned by the destruction of the house to fall upon the vendor, and that the purchase price be abated to the extent of the full value of the house.

The facts out of which the controversy arises are as follows: On July 2, 1919, the defendant, Martha Forrest, who was the fee owner of the W.½ of the N. W.¼ of section 11, township 9, range 7 east of the sixth p. m., in Lancaster county, Nebraska, entered into a written contract wtih one Jacob M. Miller, by the terms of which she agreed, upon the payment of the purchase price by

said Miller in accordance with the provisions of the contract, to convey to him said lands by warranty deed free and clear of all encumbrance. The contract provided that the purchase price to be paid by Miller was $16,400, payable as follows: $1,000 cash at the time of the making of the contract, $5,400 on or before March 1, 1920, and Miller to execute a mortgage for $10,000 upon the lands due in ten years with interest at 5½ per cent. payable semi-annually from March 1, 1920, with the privilege of paying instalments thereof on any interest paying date. The contract further provided that its covenants and agreements should be binding upon the heirs, executors, administrators, and assigns of the respective parties. The contract was assigned by Miller to William J. McGinley, the plaintiff. herein. At the time of the making of the contract the land was leased to a tenant until March 1, 1920, and full possession was not to be given to the purchaser until that date. He was, however, accorded the privilege of entering upon the stubble land and sowing fall wheat. This right he exercised. At the time of the execution of the contract there was on said premises a frame house, estimated to be worth, by the plaintiff's witnesses, from $2,000 to $3,500, and by defendant's witnesses as low as $500. The defendant had insurance upon the building in the sum of $500, which, after the destruction of the house by fire, was paid to the defendant. The house was destroyed by fire on January 15, 1920, through no fault or neglect of either of the parties. The defendant at the time was the owner of a fee simple title, and was in position to convey the land in accordance with the terms of his contract, and, at the time, there was no default of the contract on the part of the purchaser. The sole question presented by the record is as to which of the parties, vendor or purchaser, shall suffer the loss of the building destroyed by fire. Of course, it would be competent for the parties to agree as to which of them should bear the loss in case of an accidental destruction of the property, but in the case before

us the contract is silent upon that subject.

While the authorities are not entirely uniform, the great weight of judicial decisions, as well as text-writers, upon this subject support the view that where a contract for the sale of land contains no express provision as to which party shall bear the loss in case of destruction of the buildings thereon before the final delivery of the deed, or that the vendor should deliver the land with the buildings thereon in the same situation as when the contract was made, or words of similar import, and the buildings on the land are accidentally destroyed by fire, through no fault of either party, pending the contract and before conveyance, the vendor having at the time of the sale a fee simple title and there being no default on the part of the purchaser, the loss in equity, as upon a bill for specific performance, will fall upon the purchaser, he being regarded as the real owner. All of the decisions agree that the loss should be borne by the owner, but there is some diversity of opinion upon the question as to which party, vendor or purchaser, is to be regarded as the owner. The cases supporting the majority rule are based upon the theory that equity regards that as done which ought to be done, and that, when a valid and enforceable contract for the sale of land has been made, equity will regard the vendor as holding the title for the benefit of the purchaser, and the purchaser as holding the unpaid purchase money for the benefit of the vendor, and that, therefore, the purchaser must be regarded in equity as the real owner.

The leading case in which the rule is announced is *Paine v. Meller,* 6 Ves. Jr. (Eng.) *349, and this rule has been followed by many state decisions in this country, among them the following: *Marks v. Tichenor,* 85 Ky. 536; *Skinner & Sons Co. v. Houghton,* 92 Md. 68; *Thompson v. Norton,* 14 Ind. 187; *Lombard v. Chicago Sinai Congregation,* 64 Ill. 477; *Manning v. North British & Mercantile Ins. Co.,* 123 Mo. App. 456; *Marion v. Wolcott,* 68 N. J. Eq. 20; *Sutton v. Davis,* 143 N. Car. 474; *Dunn*

*v. Yakish,* 10 Okla. 388; *Woodward v. McCollum,* 16 N. Dak. 42; *Reed v. Lukens,* 44 Pa. St. 200; *Wetzler v. Duffy,* 78 Wis. 170; *Brewer v. Herbert,* 30 Md. 301; *Sewell v. Underhill,* 197 N. Y. 168, also, note under *Sewell v. Underhill,* 27 L. R. A. n. s. 233; 39 Cyc. 1641; 27 R. C. L. 555, sec. 293.

In *Lombard v. Chicago Sinai Congregation, supra,* the court pointed out that there is a difference in the rights and relations of the parties in the ordinary case of an executory contract for the sale of land at law and in equity, and it was held that in law the contract conferred upon the vendee a mere right of action, the estate remaining in the vendor and the unpaid purchase money remaining that of the vendee. In equity, however, the estate from the making of the contract is regarded as the real property of the vendee, attended by most of the incidents of ownership, and the purchase money as that of the vendor. Whether there is a sound distinction to be drawn between the rights of the parties in law or in equity, it is not necessary to determine, but it is proper to note that in some of the decisions in which the minority rule is announced the actions were at law.

The rule above announced is not applicable unless there is an ability, as well as a willingness, on the part of the vendor to convey, and it has been held that where the vendor is in a position where he cannot make title according to the contract, and the property is damaged, the loss will fall upon the vendor. The case of *Kinney v. Hickox,* 24 Neb. 167, cited by the appellant, falls within the exception to the rule. In that case at the time of the loss the vendor was not in a position to convey good title. There were certain liens upon the premises which he could or would not remove, among them being taxes, a judgment, and a mechanic's lien. Other cases cited by appellant were either law actions, or within the minority rule.

No claim is made by the defendant that there was an improper application of the money collected on the insurance policy, and that question will not be discussed

further than to say that, under the circumstances established, it would seem that the trial court was correct in abating the contract purchase price to the extent of the insurance money collected.

The decree of the district court is right, and the judgment is

AFFIRMED.

Dean, J., dissenting.

While the authorities conflict, in respect of the sole question which is presented by the record, it does not appear that the great weight of authority supports the rule adopted by the majority. I respectfully submit that a drastic rule, which is admittedly based on a legal fiction, has been adopted, and a reasonable and well-recognized rule of law, which is applicable to the facts, has been ignored.

When the rule, adopted by the majority, is applied in the present case to the facts before us, its injustice is apparent. The contract, as made by the parties, is so simple in form and so clear in expression that it affords no room for strained and technical interpretation. It should be enforced only as made. An element should not be interpolated that was not in the minds of the parties when the contract was made. When the buildings were destroyed, the time fixed by the parties for the delivery of the deed and property to the vendee had not yet arrived. True, as the opinion suggests, the parties might have agreed, in their contract, as to which of them should suffer the loss of the building in case of fire or other casualty. A sufficient answer is that they made no such agreement. In the language of the opinion, "the contract is silent upon that subject." Is not the law fulfilled when the contract is enforced to which the parties themselves gave voice? The main opinion, after observing that the contract contains "no express provision as to who should bear the loss," straightway proceeds to impose the loss, for which the parties made no provision, upon the vendee. This was done by the grace of a legal

fiction which is said to have originated in England, and which has been adopted in some of the states. The rule is not properly applicable to the facts before us, nor is it supported by the cited English case.

It is elementary that, in the absence of fraud or of mistake or of ambiguity in the terms of a contract, the duty of the court is fully accomplished when it enforces contractual obligations according to the plainly expressed provisions of the contract. The court should not supply material stipulations nor in any case make a contract for the parties. Clearly, the vendor, who was in possession, should be compelled to account to the vendee for the reasonable value of that which he contracted to deliver but did not deliver. From the viewpoint of natural justice, as some law-writers express it, and from a practical viewpoint and for reasons that are obvious, the party in possession should be holden for the loss. I respectfully submit that the rule to which the majority opinion commits the court has been adopted, not because it appeals to the reason or to the conscience, nor because it is right, but merely because the weight of authority is said to be on that side. The weight of evidence is not determined by counting the witnesses, and by the same token the better rule is not always determined by counting the authorities.

When the authorities conflict as between two opposing rules of law, the court should choose the rule that more nearly accords with reason and with settled principles of equity. The question before us is new in this state, but it has been discussed at some length in other states. In *Wicks v. Bowman*, 5 Daly (N. Y.) 225, it was held that, while it may be equitable and just that the vendee should bear the loss where the building is burned down after he enters upon the possession, "it is not just nor equitable to impose it upon him whilst the vendor is in possession of the premises."

*Sewell v. Underhill*, 197 N. Y. 168, cites and approves the rule of law announced in the *Wicks* case. But the decision in the *Sewell* case turned on another point, as

the discussion of the facts in the body of the opinion dis-
closes. It is there said: "The title was accepted and the
contract was consummated, prior to the fire, and what
was deferred was the matter of placing the deed and the
mortgage upon the records; a formality which it was
agreed should operate as a delivery, on either side.
There is the further feature of this case that the plain-
tiff, as vendee, went into the possession of the premises
upon the execution of the contract, not as a tenant pay-
ing rent, but as their equitable owner and entitled to
their beneficial enjoyment." The *Sewell* case is cited in
the majority opinion, but, in view of the facts in that
case, it plainly appears that it does not support the views
adopted by the majority in the present case.

*Thompson v. Gould*, 20 Pick. (Mass.) 134, involved a
parol agreement for the purchase of land with its appur-
tenances. Before a deed was given or tendered the house
was destroyed by fire, and it was expressly held, as dis-
closed in the syllabus, that the vendee "was entitled to
recover back the money, on the ground of a failure of the
consideration." In the body of the opinion it was
observed that the contract could not be enforced by the
vendor, even though it had been commenced in a court
of equity, because, the house having been destroyed, the
vendor was no longer able to perform his part of the con-
tract. The court then made the terse observation that no
reason has been given, nor can be given, why the same
principle that applies to the sale and purchase of per-
sonal property, that has been destroyed before delivery,
should not be applied to real estate. It was declared
that there can be no distinction between the two classes
of property in this respect.

*Wells v. Calnan*, 107 Mass. 514, involved facts similar
to those before us. Judge Gray, who wrote the opinion
for the court, held that the vendee's agreement to pay the
purchase price contemplated the tender of a deed of the
whole estate, including both the land and the buildings,
and, the latter having been wholly destroyed by fire be-

fore the day agreed upon for the conveyance, the vendor did not and could not tender such a conveyance as he had agreed to make or as the defendant vendee was bound to accept, and could not therefore maintain any action against the vendee upon the agreement.

In *Phinizy v. Guernsey*, 111 Ga. 346, 50 L. R. A. 680, it was held that to require a vendor to pay damages to his vendee, for a failure to convey property which subsequent to the execution of the contract of sale was destroyed by fire, is no greater hardship than to require a vendor to pay damages on account of his having ignorantly, though honestly, sold something which he did not own, but which he believed was his own. In *Conlin v. Osborn*, 161 Cal. 659, it was held that where improvements are destroyed by fire, while in the vendor's possession, he is excused from further performance of the contract, but in such case he can neither retain purchase money paid nor can he enforce the collection of money remaining unpaid, and the vendee may rescind the contract and recover back money that has been paid or deposited under the contract. The court further observed that, whatever may be the rule in other states, the rule is settled in California. Besides the foregoing authorities the following cases seem to support the, so-called, minority rule: *LaChance v. Brown*, 41 Cal. App. 500; *Wilson v. Clark*, 60 N. H. 352; *Powell v. Dayton, S. & G. R. R. Co.*, 12 Or. 488; *Good v. Jarrard*, 93 S. Car. 229; *Huguenin v. Courtenay*, 21 S. Car. 403, 53 Am. Rep. 688; *Smith v. Cansler*, 83 Ky. 367; *Gould v. Murch*, 70 Me. 288, 35 Am. Rep. 325.

*Paine v. Meller*, 6 Ves. Jr. (Eng.) *349, the leading English case, as announced in the majority opinion, is discussed by Chief Justice Daly in the *Wicks* case, and it is there pointed out by the distinguished chief justice that the English rule, announced by Lord Eldon in the *Paine* case, was "where the purchaser had expressed himself satisfied with the title, but before the conveyance was prepared the houses were destroyed by fire." Lord Eldon, with respect to the premises, and the purchaser's

relation thereto, expressly declared: "They are vendible
as his, chargeable as his, capable of being incumbered as
his; they may be devised as his; they may be assets; and
they would descend to his heir." And that: "The houses
being burnt before a conveyance, the purchaser is bound,
if he accepted the title." It appears that in England the
vendee prepares the deed, instead of the vendor, as with
us, and presents it to the vendor for execution. So that,
if the vendee was "satisfied with the title," it was in-
cumbent on him at once to prepare and present the title
deed to the vendor for execution. If he did not do so but
delayed, and, in the meantime, loss occurred, such loss
was rightfully his. In that view of the facts, and in view
of the following English citation, it appears that the
*Paine* case is not an authority that may properly be in-
voked in support of the main opinion. Taking the lan-
guage of the *Paine* case, in its usually accepted sense, it
plainly appears that the vendee was the owner of the real
estate for every purpose known to the law.

*Stent v. Bailis,* 2 P. Wms. (Eng.) 217, 220, is the Eng-
lish case above referred to. It bears date as of 1724.
The head note, and the opinion throughout, both bear the
imprint of blunt and rugged honesty. The head note
reads: "Against natural justice that any one should pay
for a bargain which he cannot have." In the body of the
opinion is this observation: "If I should buy an house,
and, before such time as by the articles I am to pay for
the same, the house be burned down by casualty of fire,
I shall not in equity be bound to pay for the house, and
yet the house may be built up again."

I fear the opinion of the majority contains possibilities
of substantial embarrassment to those who may hereafter
buy real estate in any form, whether it be a home, a busi-
ness property, or lands, that have not heretofore obtained
in this state. If the vendee must suffer loss by fire, after
execution of the contract and while the property is in
possession and under control of the vendor, unless he pro-
tects himself in advance by his contract, it may be that

the ingenuity of those who delight in legal fictions will bring about a condition which will compel the vendee, not only to protect himself, in advance, against such loss by fire, but as well from loss arising from judgment liens that may be obtained after the execution of the contract and before delivery of the deed and of the land, and perhaps, too, from claims of a spouse or of heirs, where a vendor dies in the interval between the date of the contract and the date of such delivery.

Some legal writers refer to the so-called English rule as a legal fiction. It is well named. Legal fictions are the bane of the law. They should not be permitted to propagate further in this state. Why should we lift the lid from a Pandora box of legal plagues? There is a better way pointed out in the wholesome rule that prevails in Maine, New Hampshire, Massachusetts, New York, California, Oregon, South Carolina, Georgia, and Kentucky. I submit the "great weight of authority" in this country can scarcely be claimed for a rule of law which does not find support in the jurisdictions just cited. Nor should *Stent v. Bailis,* 2 P. Wms. (Eng.) 217, be lost sight of. We should adhere to the reasonable rule of law there announced. Where a vendor contracts to deliver an entire estate, it is clear that his obligation is unfulfilled if he delivers only a part of it. Lord Bacon said: "Chancery is ordained to supply the law, not to subvert the law." 2 Story, Equity Jurisprudence (14th ed.) title page.

An argument that is advanced in support of the conclusion of the majority opinion is that, if a man buys real estate for an agreed price and pays a part of the earnest money and agrees to pay the remainder on a given date, he is entitled to his bargain, even though in the meantime the value of the land should have appreciated. Even so. The thing is in existence. The land contracted for is there for delivery, and under the contract the buyer is, of course, entitled to that which he bought. If the land depreciated in value he would, of course, be compelled to

pay for it, no matter what the depreciation, because the commodity that he bought, all of it, is there for delivery. The argument is not formidable. It is not even plausible, and much less is it conclusive. To illustrate: A. sells to B. for sufficient consideration land bordering on the Missouri river. The contract provides that B. shall pay the purchase price, or the unpaid part thereof, as the case may be, on a future named date, and on that date delivery of the deed and the land is to be made to B. On the day fixed for delivery A. sets out with B. to the farm to deliver to him his purchase. Upon arrival they find that on the preceding day the river changed its course, as is its wont at times, and where the land was, there is now nothing but a gurgling swirl of yellow water. Upon whom shall fall the loss by this act of God? Shall it be the loss of A. who was in possession and who contracted to deliver and now has nothing to deliver and therefore cannot fulfil his contract? Clearly the loss will fall on A., the vendor, because every vestige of that which he agreed to deliver, the *res,* has been destroyed. But if only that part of the land upon which the buildings were situate was destroyed, and if the vendee did not provide against loss from so calamitous an event in the contract, under the rule announced by the majority, the loss of the engulfed buildings would be his. Reduced to its last analysis there is something about the rule, as applied to the facts in the present case, that makes it appear almost ridiculous. Clearly a doctrinaire's rule of law, a legal fiction its progenitor, has been ingrafted upon the jurisprudence of Nebraska.

A contract to deliver an entire estate can no more be fulfilled by delivery of a part of the estate than it can be fulfilled by failing to deliver any part of the estate. It is nowhere asserted that the contract is ambiguous. But, even if it were, the construction that the parties themselves placed upon it would prevail. It appears, in the majority opinion, that the vendor collected the insurance, a trifling sum, thereby asserting an act of ownership.

But, by the grace of judicial compulsion, he paid the insurance money to the vendee, who was not a party to the insurance policy. In view of the fact, however, that, as announced in the main opinion, the sole question is, as to which of the parties shall suffer the loss, the question of insurance is a mere passing incident.

For the reasons herein expressed, I respectfully dissent from the judgment of the majority of the court.