Watkins v. Harrison.

G. W. WATKINS, APPELLEE, V. JOHN HARRISON, APPELLANT.

FILED JUNE 27, 1923. No. 22420.

1. **Husband and Wife:** DEED. After dower had been abolished in this state, a husband and wife to whom certain real estate had been conveyed by deed of general warranty, naming each of them as grantee, executed a conveyance reciting, "We do hereby sell and convey unto" the grantee the land described in the conveyance to them. The deed contained the usual covenants of title and warranty. Said deed is sufficient to convey all the interest of the wife in the premises, even though it further recites that the wife "hereby relinquishes her dower and courtesy in and to the above described premises." Comp. St. 1922, secs. 5591, 5594.

2. **Specific Performance.** Evidence examined, and *held,* to sustain the decree of the trial court requiring specific performance.

3. **Vendor and Purchaser:** RESCISSION. In order to be entitled to rescind a contract for the sale of real estate, the vendee must place, or offer to place, the vendor *in statu quo,* and where the vendee has leased the premises and the tenant is in possession, and has placed the contract of sale upon record, thus clouding the title of the vendor, the vendee is not entitled to the return of the money paid until the contract has been released or satisfied of record, and he is ready, willing and able to surrender possession.

4. **Appeal.** Where no cross-appeal is filed, and the appeal is not well taken, the court will not change or modify the decree of the district court for the mere purpose of affording appellee a larger measure of recovery.

APPEAL from the district court for Red Willow county: CHARLES E. ELDRED, JUDGE. *Affirmed.*

*E. J. Lambe,* for appellant.

*C. D. Ritchie* and *Stewart, Perry & Stewart, contra.*

Heard before MORRISSEY, C. J., LETTON, GOOD, and DEAN, JJ., BLACKLEDGE, District Judge.

LETTON, J.

Action for specific performance of a contract for the sale of real estate. The court found for plaintiff and awarded specific performance. Defendant appeals.

On July 17, 1920, plaintiff, the owner of the land, entered into a written contract with defendant for its sale,

which provided that the purchase price should be $31,000, $5,000 to be, *and was,* paid at the execution of the contract, and $14,000 on March 1, 1921. The purchaser agreed to pay a mortgage on which there would be due and unpaid on March 1, 1921, a balance of $12,000. The vendor agreed to furnish the vendee a "warranty deed and a good and merchantable abstract of title on or before March 1, 1921; to pay all taxes for 1919 and 1920; and to pay interest on the mortgage up to March 1, 1921." The vendee was to retain all crops grown on the land during the crop season of 1920. The $5,000 was paid when the contract was executed.

There is a slight conflict in the evidence, and in the following account we are stating the conclusions drawn by us from the testimony. At the time the contract was executed plaintiff inquired of defendant whom he desired to examine the title for him. Defendant named a lawyer in Indianola, the town in which he lived. Plaintiff resided at McCook. A few days afterwards the abstract of title was sent by plaintiff to this lawyer in Indianola, with a letter, part of which is as follows: "Please put this abstract in such condition that you would pass the title. You will have until next March 1, if necessary, but would like it gotten out between now and then."

In the latter part of January, 1921, plaintiff received a letter from this examiner suggesting that in a previous conveyance by Charles M. Garst and Nettie C. Garst, husband and wife, who each owned an undivided half interest in the land, the wife had only conveyed her dower interest; that at that time the right of dower had been abolished, and requesting a quitclaim deed from the wife because the deed did not convey all her interest. Plaintiff sent to Iowa, where the parties resided, and obtained a quitclaim deed, which he forwarded to the examiner. About the middle of February he received another letter from him, saying this quitclaim deed was not satisfactory, and inclosing a new form of deed. He sent this to Iowa, but it was not returned to him until March 2, 1921. He

Watkins v. Harrison.

then returned it for the signature of witnesses, and did not again receive it until March 7, properly executed. Defendant knew during the winter that the abstract had been sent to the examining attorney at Indianola. On September 12, 1920, the dwelling-house, which was uninsured, was destroyed by fire. After it became known that the house was burned, the parties had several conversations with respect to this fact; defendant insisting that he wanted the house restored or replaced, and plaintiff denying his liability to do so. In the interim defendant had some doubt as to whether he could raise the $14,000 necessary by March 1, 1921, and suggested to plaintiff that he could pay $7,000 at that time if plaintiff would be willing to wait some time for the balance, to which plaintiff assented. On March 1, 1921, defendant went to the lawyer in Indianola and asked him for his opinion as to the title. Being busy at the moment, the examiner later in the day, in a written communication addressed to both plaintiff and defendant, expressed his opinion that, since Mrs. Garst had done nothing more than convey her dower, she had never conveyed away her fee simple title in the land, and therefore plaintiff had a good marketable title to a half interest in the premises only.

On the same day defendant went to McCook and tendered to plaintiff a check for $14,000, payable to himself and unindorsed, and demanded an abstract showing a marketable title, the restoration of a house, and a deed for the land. A deed was duly tendered to defendant, and he was told that the abstract was in the office of the lawyer in Indianola. He asked for the money he had paid, and refused to take the deed. A day or two later he rescinded the contract by letter on the ground that plaintiff had failed to fulfil the terms of the contract on his part. The money to reduce the mortgage debt to $12,000 was remitted on February 27, 1921. On March 7, 1921, the quitclaim deed arrived, was placed of record, and the taxes for 1920 paid. A deed according to contract

was again tendered to defendant, which he refused to accept.

There is a controversy between the parties as to whether the Indianola lawyer represented the plaintiff or the defendant, but we are satisfied from the evidence that in passing upon the abstract and examining the title he was acting for the defendant. In preparing the quitclaim deed and advising plaintiff as to what he thought to be a defect in the title he acted for plaintiff. It is not unusual for abstracts to be furnished by a vendor to the attorney who will pass on the title for a vendee, and to authorize and empower him to clear the title so that he will be willing to approve it on behalf of the vendee. Under the terms of the Nebraska statute with respect to real estate, there was a merchantable title to the land even without the execution of the quitclaim deed from Mrs. Garst. Sections 5591, 5594, Comp. St. 1922. The deed recited that "we" "sell and convey" to the grantee named, and contained all the usual covenants of title, by both grantors.

We are also satisfied that the moving cause of defendant's refusal to accept the land was the destruction of the house by fire. This was not a valid excuse for failing to carry out the contract. *McGinley v. Forrest,* 107 Neb. 309.

On August 20, 1920, the defendant executed to one Fisher, then in possession as a tenant of plaintiff, a lease for the land beginning on March 1, 1921. Relying upon the terms of this lease, Fisher sowed from 250 to 300 acres of wheat that fall. He was in possession under the lease on March 1, 1921.

Furthermore, on February 25, 1921, defendant procured the contract to be recorded in the office of the county clerk. This was an assertion of an interest in the land, and cast a cloud upon plaintiff's title. On March 1 he did not offer to place plaintiff *in statu quo* by releasing or satisfying this instrument of record, and hence his tender, on that account, as well as upon others, was unavailing to establish performance on his part. While the contract provides

that "time is an essential element in this contract," we are satisfied that the contract was substantially performed by plaintiff upon the 1st day of March, and the defendant had no reasonable excuse for failing to perform on that day.

The decree of the trial court allowed defendant credit for $1,500, which was found to be the value of the house which had been destroyed by fire. He was thus given the benefit of the only substantial objection which he really had to the performance of the contract. There is no cross-appeal by plaintiff.

AFFIRMED.