UNION CENTRAL LIFE INSURANCE COMPANY, APPELLANT, V. NOEL COVER, APPELLEE.

289 N. W. 331

FILED DECEMBER 15, 1939. No. 30635.

*Hamer, Worlock, Randall & Tye,* for appellant.

*Hoagland, Carr & Hoagland, contra.*

Heard before SIMMONS, C. J., EBERLY, PAINE, CARTER, MESSMORE and JOHNSEN, JJ.

SIMMONS, C. J.

The appellant was the plaintiff and the appellee was the defendant in the court below. They will be referred to herein as plaintiff and defendant.

This is an equity action brought to rescind and cancel an agreement to purchase real estate, to foreclose any interest of the defendant therein, to quiet title in the plaintiff thereto, and for judgment for the use of the premises during the time that they have been occupied by the defendant. By his answer and cross-petition, defendant alleges a modification of the contract as to time of performance, a failure of the plaintiff to pay taxes and water-right assessments; damage to the buildings, orchard, and windbreak on the property subsequent to his contract to purchase; his inability to secure water because of plaintiff's failure to pay the water assessments, and loss of crops thereby; and prays for an accounting of the amount due and for specific performance of the contract as modified.

In June, 1934, the plaintiff was foreclosing a mortgage on a quarter-section of farm land in Dawson county. On

June 12, 1934, the defendant made a written proposal to purchase the property, which was accepted by the plaintiff on June 25, 1934. The agreed purchase price was $10,000, with $500 cash paid at that time, the remainder to be paid on or before March 1, 1935, by the payment of $1,500 in cash and the execution and delivery of notes and a mortgage for $8,000 payable in 10 years from January 1, 1935, with interest payable annually at 5 per cent., and 2 per cent. of the $8,000 payable annually after five years. The defendant accepted notice that foreclosure was in process and agreed that, if the plaintiff did not secure title, the contract was to be void and the $500 down-payment was to be returned with interest at 5 per cent. Defendant reserved the right to complete the contract "if possession and title can be given to me within a reasonable time after March 1, 1935."

Defendant agreed to "assume and pay the general taxes commencing with the year 1935, payable 1/1/36, and all other taxes and/or special assessments now levied or which hereinafter may be assessed or levied against said premises;" and further agreed "from March 1, 1935, * * * to assume full responsibility of the maintenance and upkeep of said premises, buildings and improvements and * * * keep said buildings insured." Final settlement was to be made, and a deed delivered "with warranty only as against your (plaintiff's) own acts * * * on or before March 1, 1935, or as soon as said title is shown to be merchantable."

The foreclosure was not complete, and plaintiff was not in a position to perform on March 1, 1935. Subsequent thereto, title vested in plaintiff by confirmation of foreclosure sale, and in October, 1935, plaintiff tendered to the defendant an executed deed together with note and mortgage for execution and asked for the payment of the $1,500. About that time, defendant had contacted plaintiff's agents and advised them that, inasmuch as he was not to receive possession so as to receive the beneficial use of the land for the year 1935, he did not feel that he should close the contract until March 1, 1936, and plaintiff agreed

to a modification of the contract to that extent. Plaintiff made another tender and demand for performance in February, 1937, and on November 29, 1937, following a final effort to secure settlement, plaintiff tendered the defendant a return of the $500 down-payment and notified defendant of the cancelation of the contract.

At the time of the tender in October, 1935, the 1935 taxes on the property in the sum of $427.26, and some prior taxes, had not been paid. Apparently, the 1935 taxes have not since been paid.

Defendant claimed that, subsequent to the date of the contract, the orchard and buildings had been damaged, and demanded a set-off of the damages against the purchase price, and refused to perform until said alleged damages were adjusted and allowed. In the spring of 1936, he fixed the amount of those damages at $2,600.

Following confirmation of the foreclosure sale, members of the family of the former owner remained in possession of the buildings until April, 1937.

In April, 1936, defendant (without complying with the contract and without notice to the plaintiff) entered into possession of the premises, farmed the same during the crop season of 1936, and since said time has remained in possession of the land. The defendant planted the land to alfalfa, claims to have secured a good stand, and that alfalfa was lost as a result of his failure to secure water. Defendant did not demand possession of the buildings from the plaintiff. Legal steps were not taken by either plaintiff or the defendant to secure possession of the buildings from the occupants. Defendant testified, however, that before March 1, 1936, the occupants asked him if they could stay in the buildings, and that "I told them I couldn't let them stay, I wanted them to get out of there."

At the time the buildings were vacated in April, 1937, they were in a poor state of repair. The barn was old in 1909 and not very well constructed. The house was old at that time. Repairs and additions were made to it in 1910 or 1911. The orchard and windbreaks were planted in

1909 and cared for up to, but not after, 1930. The defendant testified that the condition of the house was "good" on March 1, 1935, and "very good" on March 1, 1936, and that the barn "was in very good shape" on March 1, 1936. Within 30 or 40 days after the buildings were vacated in 1937, a large number of the windows in the house were out, plaster had fallen off, doors were off the hinges, a portion of the porch had sunk down and the barn collapsed in a heavy windstorm. The defendant contends that a large part of the supports on the inside of the barn were taken out during the period from March, 1936, to April, 1937, and that the barn collapsed as a result. That testimony is denied by parties in a position to know the facts. The defendant after March 1, 1936, made no effort to preserve the buildings or prevent waste being committed thereon. It appears reasonably clear that whatever depreciation, above ordinary wear and tear, suffered by the house occurred after it was vacated in April, 1937.

There was owing to the Cozad Ditch Company the sum of $210 for irrigation water maintenance charges for the years 1931 to 1935. Defendant contended that plaintiff should pay these charges with accrued interest. On May 7, 1937, defendant paid these charges, which, with interest, amounted to $295.26, and demanded credit therefor on the purchase price.

On September 30, 1938, the trial court entered its decree, finding that time for performance of the contract was extended to March 1, 1936; that the defendant was entitled to specific performance of his contract; that the plaintiff did not deliver possession of the buildings until 1937, and that, because of the damage thereto, the real estate had depreciated in value in the sum of $800; that he was entitled to receive the property with the 1935 general taxes paid; that defendant was entitled to credit for the maintenance taxes paid in the sum of $295.26 and for the $800 damages to the buildings; and that as of March 1, 1936, there was a balance due the plaintiff of $9,500. He deducted the maintenance and damages totaling $1,095.26 from the $9,500 and deter-

mined that the balance was $8,404.78 (should be $8,404.74), and upon that amount computed interest at 5 per cent. for 2 years and 7 months, which amounted to $1,085.70, making the total due the plaintiff, $9,490.48. The court further found that all over $8,000, to wit, $1,490.48, should be paid within 60 days from date, and that $8,000 should be evidenced by a note and mortgage payable March 1, 1946, with interest at 5 per cent. per annum, 2 per cent. of the $8,000 to be paid annually after March 1, 1941. The court further found that, upon the execution of the note and mortgage and the payment of $1,490.48, plaintiff should execute a good and sufficient warranty deed conveying clear title to said premises as of March 1, 1936, and furnish an abstract showing title to be in plaintiff as of March 1, 1936, with taxes for 1935 and prior years paid, and that upon failure of the plaintiff so to do, the decree quieted title in the defendant subject to the mortgage. The court further found that should the defendant not pay the $1,490.48 and execute said note and mortgage within 60 days, then the contract of purchase shall be null and void, title to the lands quieted in plaintiff, possession given and judgment for three years' rental at $800 per year less $500 was to be rendered to the plaintiff against the defendant accordingly. The court so decreed.

The trial court having denied the defendant recovery for damages to the orchard and loss of his alfalfa crop, and no cross-appeal being taken, those matters are referred to herein only in so far as they may explain the conduct of the defendant. The appeal presents the question: Is the plaintiff entitled to a rescission and cancelation of the contract, or is the defendant entitled to specific performance? If that question is resolved in favor of the defendant, then the next three questions presented are: (1) Is the defendant entitled to receive the premises with the 1935 general taxes paid? (2) Is the defendant entitled to credit for damages and depreciation to the buildings? (3) Is the defendant entitled to a credit for his payment of the water maintenance charges?

The record indicates a desire of the defendant at all times to complete the purchase of the property, and a willingness of the plaintiff to carry out the contract of sale, down to and including November 29, 1937. At that time, the plaintiff notified the defendant that it rescinded and canceled the contract because of the failure and refusal of the defendant to comply with the terms, conditions, and provisions of the contract. During the time that both parties were willing to perform the contract, the defendant was making claim for certain alleged unliquidated damages which he insisted should be adjusted and credited on the purchase price. He also demanded that the plaintiff pay the 1935 general taxes and water charges which had not been paid. There was an oral agreement that the time of settlement was extended to March 1, 1936. At the time of the tender made by the plaintiff in October, 1935, the 1934 taxes had not been paid. The demand of the plaintiff for the payment of the $1,500 plus the execution of notes and a mortgage for $8,000 before those taxes were paid was not justified. The plaintiff, while unwilling to grant the credits, did not until November 29, 1937, attempt to rescind and cancel the contract, and did not begin this action until February 8, 1938. While the demands of the defendant for credits were not justified, yet both parties considered the contract as in force and attempted to make settlement under it. Under the circumstances here existing, we will not disturb the decree of the trial court denying rescission to the plaintiff and decreeing specific performance of the contract.

It is axiomatic, however, that the contract to be performed must be the contract which the plaintiff and the defendant made. The contract calls for the defendant to assume and pay the 1935 general taxes. It was clearly within the contemplation of the parties that plaintiff might not be able to convey title and give possession on March 1, 1935. The defendant reserved the right to complete the contract if possession and title could be given within a reasonable time after March 1, 1935. Defendant, under the

contract, could elect to make settlement at a subsequent time, or he could elect to consider the contract null and void and secure a return of his "earnest money" with interest. However, the contract did not provide for the waiver of its terms with reference to the taxes if the contract was completed after March 1, 1935. The subsequent oral agreement to make settlement March 1, 1936, did not affect the defendant's contractual obligation to assume and pay the 1935 general taxes. The defendant, therefore, as a condition to specific performance, must comply with his contract to assume and pay the 1935 general taxes. It follows that the trial court erred in finding that the defendant was entitled to receive the property with the 1935 general taxes paid.

In the contract of purchase, the defendant assumed "full responsibility of the maintenance and upkeep of said premises, buildings and improvements" from March 1, 1935. Defendant by his answer alleges that the "contract and conditions thereof were deferred for one year and that the said plaintiff retained possession of said property until March 1, 1936, and assumed *the full responsibility* for the maintenance and upkeep of said premises, buildings and improvements during the year 1935 and until March 1, 1936."

From the testimony of the defendant himself, it is evident that the damages, if any, to the buildings occurred after March 1, 1936. The defendant also entered into possession of the premises as of that date, asserted rights of ownership, and has since maintained that possession and received the beneficial use of the premises. He asserted acts of ownership of the buildings by telling the occupants that he "wanted them to get out," and he made no effort to protect the buildings or prevent waste.

The defendant cannot accept the advantages of ownership without also accepting its responsibilities and liabilities, contractual and otherwise. The record discloses that before entering possession he had the abstract of title examined, and his acts thereafter indicate that he approved the title as to all matters except taxes.

Under the circumstances here existing, an equity court regards the defendant as the real owner subject to the claim of the plaintiff for the unpaid purchase price. The defendant as the owner of the premises must bear the loss, if any, that has occurred to the buildings. *McGinley v. Forrest*, 107 Neb. 309, 186 N. W. 74; 66 C. J. 1052; 14 Neb. Law Bulletin, 178. Independent of equitable rules, the defendant assumed that responsibility by his contract, and it attached as of a date, in any event, not later than March 1, 1936.

The trial court therefore erred in allowing the defendant a credit for damage to buildings.

We come next to the question of the deduction of the amount of the water charges. There is no reference in the contract to water charges or irrigation. The corporate capacity of the Cozad Ditch Company, to whom the payment was made, is not shown. So far as this record is concerned, it is a private corporation engaged in the business of selling water. There is in evidence a letter from the Cozad Ditch Company, indicating that it is the successor of the Cozad Irrigation Company, and that it "recognizes a water right on" the land involved in this controversy. The abstract, which is in evidence, shows a water-right deed executed by the Cozad Irrigation Company to one Robert Shields wherein the company sold Shields, his heirs and assigns the right to the use of water from the company's canal upon the land here in controversy; the grantee to pay an annual rental for the use of said water, payment to be a condition precedent to the delivery of water, and upon default in payment the company had the right to cease delivery until payments are made or declare the contract forfeited, and in the event the company declared a forfeiture, all "equitable and legal interests in the water rights" conveyed reinvested in the company.

Assignments of the rights conveyed were not to be binding on the company unless approved by them.

No evidence is cited showing either an assignment of this contract to the plaintiff or the approval of such an assign-

ment by the company. The water rights, obligations, and appropriations of the company are not shown.

Defendant in his answer alleges, and in his brief argues, that the contract for water was an appurtenance to the property which it was the duty of the plaintiff to convey to the defendant; that he had a right to the conveyance of that appurtenance free of the lien. The contract is silent, however, as to that matter. Elsewhere in his brief, defendant refers to these charges as an "equitable lien," and still later states that they "are a valid lien against this property." Certainly, these charges are not a valid lien unless made so either by statute or contract.

"In a number of the Western States it is provided by statute to the effect that the contract amount, or the amount that may be provided for in accordance with law, to be paid to water companies by the consumers furnished with water shall be a first lien upon the land for the irrigation of which the water is furnished and delivered. But whether this right is provided for by statute or not, we take it that a corporation has the power to make such a contract with its consumers, and that the lien so provided for may be enforced. * * * *But in order to create the lien on the land the language used in the contract must be definite and specific, and must be a direct declaration that such a lien is created by its terms.*" 3 Kinney, Irrigation and Water Rights (2d ed.) 2741, sec. 1522. See, also, 67 C. J. 1419.

The "water-right deed" does not purport to make the rental charges a lien upon the land. Collection is enforced by stopping delivery of water or a forfeiture of rights under the contract, and a loss of the consideration paid. The abstract does not carry the delinquent charges; apparently they do not appear upon any public record, and, obviously, they are paid direct to the company.

Defendant cites section 77-207, Comp. St. 1929, which is as follows: "All special assessments, regularly assessed and levied as provided by law, shall be a lien on the real estate on which assessed, but shall be subject to the general taxes mentioned in the last preceding section."

If these are such special assessments, then the defendant is obligated to pay them, for he agreed to pay "all other taxes (except general) and/or special assessments *now levied* or which hereinafter 'may be assessed or levied against said premises."

The burden of establishing a lien is upon the defendant. Under the facts as disclosed by this record, we are unable to determine that such a lien exists or that the plaintiff is liable to remove the same if it exists. The defendant has failed to sustain his burden of proof. The trial court erred therefore in allowing the defendant credit for the water charges paid.

The trial court erred in ordering the plaintiff to deliver a warranty deed. The deed should be in accord with the covenants of the contract. Likewise, the mortgage should conform to the contract. The defendant should also be required to insure the premises and otherwise perform the contract.

The decree of the district court is accordingly modified and remanded to the trial court with instructions to enter a decree conforming to this opinion, and in particular to provide that:

(1) The defendant shall pay the plaintiff the sum of $1,500 together with interest thereon from March 1, 1936, at 6 per cent. per annum.

(2) The defendant shall pay the plaintiff interest on the sum of $8,000 from March 1, 1936, at 5 per cent. per annum.

(3) All calculations of interest presently payable shall be made to the date of the payment thereof.

(4) The defendant shall pay all taxes accrued and owing for the year 1935 and years subsequent thereto.

(5) The defendant shall make, execute and deliver to the plaintiff notes for $8,000, due March 1, 1946, with interest payable annually at 5 per cent. per annum, and 2 per cent. of the principal sum of $8,000 payable annually beginning March 1, 1941, and shall make, execute, and deliver a mortgage to the plaintiff securing said indebted-

ness upon said premises, the terms of said notes and mortgage to be in conformity with the provisions of said contract.

(6) Denying to the defendant recovery of the sum of $800, or any other amount, for decrease in value of the premises resulting from loss of barn or damage to the house on said premises.

(7) Denying to the defendant recovery of the sum of $295.26, or any other sum, for water maintenance charges paid.

(8) The defendant shall insure the buildings and deliver said policies to the plaintiff as provided in the contract.

(9) All costs of this action are to be taxed to the defendant. Plaintiff's costs shall be paid by the defendant before the execution and delivery of the deed from the plaintiff to the defendant.

(10) The defendant shall fully comply with the provisions of said decree within 40 days from the issuance of the mandate herein.

(11) When the defendant shall have complied with the provisions of said decree and made said payments, then the plaintiff shall execute and deliver to the defendant a deed for said premises with covenants as provided in said contract.

(12) Should the defendant fail to comply with the provisions of said decree within the time set out herein, then and in that event, the contract of purchase shall be declared null and void, the title to said land quieted in the plaintiff, the plaintiff shall have and recover possession thereof, and at its request a writ of restitution shall issue, and the plaintiff be placed in possession, and the plaintiff shall have judgment against the defendant for the sum of $1,900 for the use and occupancy of said premises for the years 1936, 1937, and 1938, said sum being calculated at the rate of $800 per annum, and deducting therefrom the sum of $500 paid by the defendant to the plaintiff at the time said contract of purchase was executed.

AFFIRMED AS MODIFIED.