JAYME HANS, APPELLANT, V.
PENNY LUCAS, APPELLEE.
703 N.W.2d 880
Filed September 23, 2005.   No. S-04-1179.

Richard D. Dunn, of Pansing, Hogan, Ernst & Bachman, L.L.P., for appellant.

Mark A. Christensen and Travis P. O'Gorman, of Cline, Williams, Wright, Johnson & Oldfather, for appellee.

HENDRY, C.J., CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

HENDRY, C.J.

## INTRODUCTION

This is a subrogation action brought in the name of the seller, Jayme Hans, against the buyer of a home, Penny Lucas. The

action was filed as a result of damage sustained to the home in a fire. At the time of the fire, Hans and Lucas had entered into a purchase agreement, but closing had not yet occurred. The purchase agreement contained provisions permitting Lucas to reside in the home pending closing. Hans alleged that Lucas' conduct caused the fire and damages.

The legal issue, presented to the district court upon both parties' filing motions for summary judgment and agreeing to a stipulation of facts, was whether Hans could maintain a subrogation action against Lucas given the relationship between Hans and Lucas created by the purchase agreement.

The district court determined that Hans bore the risk of loss under the purchase agreement and was therefore precluded from seeking subrogation against Lucas. Upon the court's dismissal of Hans' motion for summary judgment and granting of Lucas' motion for summary judgment, Hans appeals.

## BACKGROUND

The parties stipulated that on January 20, 2003, Lucas executed a purchase agreement to buy a home owned by Hans. The closing date was not set, and because Lucas wished to live in the house until closing, the parties executed an addendum at the same time, which was specifically made part of the purchase agreement. In subparagraph 3b of the addendum, Lucas agreed to compensate Hans $17 per day for the use of the house from February 8, 2003, until and including the closing date. Subparagraph 3k then provided: "Buyer [Lucas] is urged to procure insurance on Buyer's personal property as Seller [Hans] assumes no liability or responsibility for the personal property of Buyer. Seller will maintain fire and extended coverage on subject property."

In accordance with the "urging" contained in subparagraph 3k, Lucas obtained a renter's insurance policy, which afforded coverage for both personal property and personal liability. Also, in accordance with subparagraph 3k, Hans "maintained" a homeowner's insurance policy, which was in effect on the date of the fire. The parties stipulated that on March 5, 2003, a fire "broke out" as a result of Lucas' cooking french fries on the stove. The uncontroverted evidence further showed that $24,683.13 was

expended to effectuate repairs to the residence proximately caused by the fire.

In her complaint, Hans sought damages from Lucas under negligence, "Equitable Conversion/Unjust Enrichment," and breach of contract theories of recovery. In her answer, Lucas alleged that "Allied Insurance [Hans' insurer] and Plaintiff are precluded from recovering from Defendant by the well-established principle that an insurer cannot recover against its own insured. Allied Insurance has no subrogation rights against Defendant in light of the relationship between Plaintiff and Defendant."

After both parties filed motions for summary judgment, the district court entered judgment in favor of Lucas. Although the district court noted that portions of the addendum suggested that a landlord-tenant relationship had been established, it stated that the addendum was ambiguous with respect to that relationship. The district court then concluded:

> The most persuasive clause in the addendum is found in 3(k) where Defendant [Lucas] was urged to procure insurance on her personal property, and Plaintiff [Hans] assumed no liability or responsibility for the personal property of Defendant. Plaintiff agreed to maintain fire and extended coverage on the Residence. The contract language urges Defendant to purchase insurance on personal items and specifically denies any liability to Plaintiff. . . . Clause 3(k) illustrates that the parties allocated the risk of fire to Plaintiff. Although it was Defendant that negligently caused the fire, given the Addendum to Purchase Agreement read in whole, the reasonable expectation of the parties prohibits the placement of the risk of fire on Defendant. . . . It would be unreasonable to expect Defendant to insure the same structure on which fire insurance has already been contractually assigned to Plaintiff.

## ASSIGNMENTS OF ERROR

Hans assigns that the district court erred in (1) failing to find that as the buyer, Lucas bore the risk of loss under the doctrine of equitable conversion; (2) determining that a landlord-tenant relationship existed between Hans and Lucas; and (3) determining that Hans should bear the risk of loss when Lucas was responsible for the fire.

424

## STANDARD OF REVIEW

■ Summary judgment is proper when the pleadings and evidence admitted at the hearing disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Fraternal Order of Police v. County of Douglas, ante* p. 118, 699 N.W.2d 820 (2005).

■ The interpretation of a contract involves a question of law, in connection with which an appellate court has an obligation to reach its conclusions independently of the determinations made by the court below. *Johnson v. United States Fidelity & Guar. Co.*, 269 Neb. 731, 696 N.W.2d 431 (2005).

## ANALYSIS

■ Initially, we note that the purchase agreement, apart from the addendum, contains a "Risk Loss" provision in paragraph 11. Although Lucas' attorney referenced paragraph 11 during oral argument, neither party argued in her brief that it is controlling, and we conclude that it is not. Paragraph 13 of the purchase agreement provided that the agreement "shall in no manner be construed to . . . give any right of possession." When read in context with paragraph 13, the risk-of-loss provision in paragraph 11 was clearly intended to apply to the "typical" situation in which the buyer takes possession upon closing, whereas the parties' addendum provided for and governed the specific circumstance of the buyer's taking possession prior to closing. When general and specific terms in a contract relate to the same thing, the more specific provision controls. *Krzycki v. Genoa Nat. Bank*, 242 Neb. 819, 496 N.W.2d 916 (1993). We will therefore look to the addendum to the extent it becomes necessary to determine the relationship of Hans and Lucas in this circumstance.

### EQUITABLE CONVERSION

In her first assignment of error, Hans contends that the district court erred in granting summary judgment to Lucas because, under the doctrine of equitable conversion, the risk of loss was borne by Lucas as the buyer. Lucas argues that the doctrine of equitable conversion is not applicable under these facts because the addendum specifically allocated the risk of loss to Hans during the term of occupancy.

In support of her contention, Hans relies primarily upon *McGinley v. Forrest*, 107 Neb. 309, 186 N.W. 74 (1921), wherein this court adopted the equitable conversion doctrine. In *McGinley*, the buyer had contracted to purchase farmland, which included a house the buyer estimated to be worth $2,000 to $3,500. The house, which the seller had insured for $500, was destroyed by fire before the purchaser received legal title. The trial court abated the purchase price by an amount equal to the insurance proceeds. On appeal, the buyer argued that he was entitled to abatement equal to the full value of the house. This court affirmed, stating:

> [*W*]*here a contract for the sale of land contains no express provision as to which party shall bear the loss* . . . the vendor having at the time of the sale a fee simple title and there being no default on the part of the purchaser, the loss in equity, as upon a bill for specific performance, will fall upon the purchaser, he being regarded as the real owner. . . . The cases supporting the majority rule are based upon the theory that equity regards that as done which ought to be done, and that, when a valid and enforceable contract for the sale of land has been made, equity will regard the vendor as holding the title for the benefit of the purchaser, and the purchaser as holding the unpaid purchase money for the benefit of the vendor, and that, therefore, the purchaser must be regarded in equity as the real owner.

(Emphasis supplied.) *Id.* at 312, 186 N.W. at 75.

Hans' reliance on *McGinley* is misplaced. Implicit in the equitable conversion rule enunciated in *McGinley* is this court's recognition that the rule will not apply when the parties expressly state which party to a contract for the sale of land will bear the risk of loss. See 107 Neb. at 314, 186 N.W. at 76 (Dean, J., dissenting) ("as the opinion suggests, the parties might have agreed, in their contract, as to which of them should suffer the loss of the building in case of fire or other casualty").

This court has determined in an analogous circumstance that a contractual agreement to obtain insurance inures to the benefit of both parties when they both have an insurable interest in the property that is the subject of the contract. See *Midwest Lumber Co. v. Dwight E. Nelson Constr. Co.*, 188 Neb. 308, 196

N.W.2d 377 (1972). *Midwest Lumber Co.* involved builder's risk insurance. In the construction contract, the builder agreed to obtain public liability insurance and the owner agreed to provide builder's risk, or fire and extended coverage, insurance. During construction, a windstorm blew down some of the framing, which had to be replaced. The owner's insurer alleged the damages were caused by the builder's negligence and sought subrogation from the builder in the owner's name. The issue was whether the insurance covered only the owner's risks, or the risks of both the owner and the builder. The trial court sustained the builder's motion for judgment on the pleadings, and this court affirmed.

Similar to the issue in this case, we stated in *Midwest Lumber Co.*, 188 Neb. at 310-11, 196 N.W.2d at 379, that "[i]n the absence of some contractual provision to the contrary the risk of loss by windstorm, fire, etc., to a new building in the course of construction is normally on the builder, that is, he is obligated to restore the building damaged or destroyed." However, we concluded that if the parties were interested only in covering their own risks, they need not have consulted each other. Thus, the only reason for including a provision to obtain insurance in the contract was to protect the interests of both parties. *Id.* Under those circumstances, the owner could not recover from the builder "because the risks of both contractor and owner were intended by the parties to the construction contract to be covered by insurance." *Id.* at 310, 196 N.W. at 379. We reasoned that through the construction contract, the owner became the builder's insurer and could not recover from its own insured. Because the owner's insurer could have no greater rights than its insured against a third party, it could not seek subrogation from the builder. *Id.*

Similarly, in paragraph 3k of the addendum, Hans expressly agreed to carry fire insurance. At the summary judgment hearing, a stipulation of facts was offered by Hans and received without objection. Paragraph 11 of the stipulation reads: "Pursuant to the terms of the Addendum, [Hans] agreed to maintain fire and extended coverage on the Residence." Under *Midwest Lumber Co., supra,* Hans' express contractual agreement to "maintain fire and extended coverage on the subject property" was a promise to

carry insurance for the benefit of Lucas when both parties had an insurable interest in the property.

Hans counters that Lucas contractually agreed to bear the risk of fire, noting that in the addendum, Lucas agreed to accept liability for any damages over and above normal wear and tear. However, we agree with the district court that this provision was not an agreement to bear the risk of damages caused by fire. First, as the district court noted, the addendum also stated that Hans' reimbursement for such damages would be deducted from the earnest money deposit, refuting any purported intent to hold Lucas liable for material damages caused by fire. Second, Hans' argument is inconsistent with her specific agreement to carry fire insurance. See *Krzycki v. Genoa Nat. Bank*, 242 Neb. 819, 496 N.W.2d 916 (1993) (specific contractual provisions control over related general provisions).

We determine as a matter of law that the risk of loss for the damages sustained to the residence was to be contractually borne by Hans. See *Johnson v. United States Fidelity & Guar. Co.*, 269 Neb. 731, 696 N.W.2d 431 (2005) (interpretation of contract involves question of law). The issue then becomes whether the contractual relationship precludes Hans' subrogation action.

Neither party contests that both Hans and Lucas had an insurable interest in the property. Applying the reasoning in *Midwest Lumber Co. v. Dwight E. Nelson Constr. Co.*, 188 Neb. 308, 196 N.W.2d 377 (1972), we determine that because Hans contractually assumed Lucas' risk of loss by fire, Lucas was an implied coinsured for the limited purpose of defeating Hans' subrogation claim. See *Employers Reins. Corp. v. Santee Pub. Sch. Dist. No. C-5*, 231 Neb. 744, 438 N.W.2d 124 (1989) (discussing *Midwest Lumber Co.* and concluding that both named insured and third party are insureds when insurer is obligated to indemnify third party because of its insured's agreement to indemnify third party); *Reeder v. Reeder*, 217 Neb. 120, 348 N.W.2d 832 (1984) (concluding that subrogation against insured's guest was precluded when insured's promise to maintain insurance on home insured was not currently occupying showed insured's intent that insurance was to benefit guest living in home), citing *Alaska Ins. Co. v. RCA Alaska Commun.*, 623 P.2d 1216 (Alaska 1981) (commercial tenant was implied

coinsured for limited purpose of defeating insurer's subrogation claim when lease provision required landlord to obtain and keep in effect insurance on premises).

■ Although an insurance company has the right to recover against a wrongdoer whose conduct has subjected the insurance company to liability, no right of subrogation can arise in favor of an insurer against its own insured. *Jindra v. Clayton*, 247 Neb. 597, 529 N.W.2d 523 (1995). See, also, *Fellmer v. Gruber*, 261 N.W.2d 173 (Iowa 1978) (holding that seller carried insurance for benefit of buyer and held proceeds in trust for buyer when seller agreed to maintain insurance until possession date but barn burned before buyer took possession); *Housing Inv. Corp. v. Carris*, 389 So. 2d 689 (Fla. App. 1980) (provision in contractor's contract that owner would carry casualty insurance shifted risk to insurer, and owner was limited to insurance proceeds, barring subrogation action); 16 Lee R. Russ & Thomas F. Segalla, Couch on Insurance 3d § 224:1 (2000) (antisubrogation rule extends to prevent subrogation against persons who have obtained status of additional insured or coinsured pursuant to agreement requiring insured to carry insurance for benefit of another). We conclude that Hans' insurance carrier may not recover from an implied coinsured for the very risk it contracted to assume.

### REMAINING ASSIGNMENTS OF ERROR

In support of her second assignment of error, Hans argues that "if the lower court's decision, which is not entirely clear, rests upon a finding of a landlord/tenant relationship, thereby preventing subrogation against [Lucas], then the lower court's interpretation of the Addendum was erroneous." Brief for appellant at 15. See *Tri-Par Investments v. Sousa*, 268 Neb. 119, 680 N.W.2d 190 (2004). Having previously determined that Hans' express contractual provision that she would bear the risk of fire precluded a subrogation action for that loss, we need not consider whether subrogation was also precluded by a landlord/tenant relationship.

■ Finally, in Hans' third assignment of error, she contends that "[t]he lower court erred in finding that [Hans] should bear the risk of loss notwithstanding the fact that [Lucas] was clearly the party responsible for the fire." This assignment of error is

resolved by our determination that Lucas was an implied insured. See *Tri-Par Investments*, 268 Neb. at 123, 680 N.W.2d at 194 (insurer "cannot seek to subrogate against its own insured, even if the insured was negligent in causing the loss").

## CONCLUSION

The district court did not err in determining that there was no material issue of fact and that, as a matter of law, Hans' express agreement to maintain fire and extended coverage on the house during the time that Lucas occupied the house before closing precluded Hans' insurance carrier from seeking subrogation from Lucas.

AFFIRMED.

WRIGHT, J., not participating.