GREGORY F. JOHNSON, APPELLANT, V. UNITED STATES FIDELITY AND GUARANTY COMPANY, A CORPORATION NOW KNOWN AS ST. PAUL FIRE AND MARINE INSURANCE COMPANY, AND EMPLOYERS MUTUAL CASUALTY COMPANY, A CORPORATION, APPELLEES.

696 N.W.2d 431

Filed May 6, 2005.    No. S-03-748.

Daniel H. Friedman and Herbert J. Friedman, of Friedman Law Offices, for appellant.

Cathy S. Trent and Stephen L. Ahl, of Wolfe, Snowden, Hurd, Luers & Ahl, L.L.P., for appellee United States Fidelity and Guaranty Company.

Randall L. Goyette and Molly M. Egley Brummond, of Baylor, Evnen, Curtiss, Grimit & Witt, L.L.P., for appellee Employers Mutual Casualty Company.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, MCCORMACK, and MILLER-LERMAN, JJ.

HENDRY, C.J.

## NATURE OF CASE

This is an action arising out of a motor vehicle accident that occurred in Colorado in which appellant Gregory F. Johnson was injured. After recovering from the tort-feasor's insurers, Johnson sought additional benefits from his own insurer and the insurer of the car he was driving when injured. The district court for Lancaster County granted the insurers' motions for summary judgment, determining that in accordance with Colorado law, Johnson was not entitled to any additional benefits.

## . BACKGROUND

At the time of the accident, Johnson was a partner in a Kearney, Nebraska, automobile dealership known as Action Auto Exchange. Action Auto Exchange was insured by Employers Mutual Casualty Company (EMC). EMC's policy provided, inter alia, underinsured motorist (UIM) coverage in the amount of $100,000 and medical payments coverage.

In December 1993, another Kearney automobile dealer, Leon Brown, asked Johnson to ride with him to Denver in order to drive back any vehicle Brown might purchase at an automobile auction. Brown paid Action Auto Exchange for Johnson's services. Brown's dealership was insured under a policy issued by United States Fidelity and Guaranty Company (USF&G), which also provided, inter alia, UIM coverage in the amount of $100,000 and medical payments coverage.

On December 15, 1993, while driving a pickup Brown purchased in Colorado, Johnson was struck from behind by an automobile driven by Melissa Schultz. The impact caused the pickup to roll over. Johnson was seriously injured and sued Schultz and her insurers, Shelter Insurance Company and Allstate Insurance Company. These policies provided, respectively, $50,000 and $100,000 of automobile liability coverage. Both of Schultz'

insurers tendered their policy limits to settle Johnson's claims, which offers Johnson accepted in November 2000.

Johnson then made demand against USF&G and EMC for unpaid medical expenses and UIM benefits. Both of these policies contained out-of-state coverage extensions, requiring the insurers to "[p]rovide the minimum amounts and types of other coverages, such as no-fault, required of out-of-state vehicles by the jurisdiction where the covered 'auto' is being used." Both policies also contained setoff provisions, purporting to reduce the insurer's UIM liability by any moneys recovered from a legally responsible party. In conformance with Colorado law and the out-of-state coverage provisions, USF&G paid Johnson the maximum required personal injury protection (PIP) benefits of $100,000. EMC denied coverage for the balance of Johnson's claimed medical expenses. Both USF&G and EMC denied Johnson's claim to UIM benefits.

On November 13, 2000, Johnson brought suit against USF&G and EMC in the district court for Lancaster County, alleging he was totally and permanently disabled, had incurred medical expenses in excess of $151,000 to date, and would require future surgery and medical treatment. Johnson set out three causes of action. In his first cause of action, Johnson alleged that USF&G and EMC each owed him $100,000, their respective policy limits for UIM coverage. In his second cause of action, Johnson asserted that EMC owed him $51,000, which he claimed was the balance of his medical expenses not covered by the $100,000 PIP benefit previously paid by USF&G. In his third cause of action, Johnson alleged that USF&G and EMC's denials of benefits were made in bad faith.

USF&G and EMC moved for summary judgment. Following an evidentiary hearing, the district court found there were no genuine issues of material fact and that USF&G and EMC were entitled to judgments against Johnson. In granting summary judgment, the district court concluded that (1) under *Crossley v. Pacific Employers Ins. Co.*, 198 Neb. 26, 251 N.W.2d 383 (1977), Colorado law applied to Johnson's UIM claim, and that as a result, Johnson was not entitled to UIM benefits from either USF&G or EMC; (2) under Colorado law, Johnson was not entitled to PIP benefits from EMC; (3) pursuant to a contract

exclusion, Johnson was not entitled to medical payments benefits from EMC; and (4) USF&G and EMC had not acted in bad faith. Johnson appeals.

## ASSIGNMENTS OF ERROR

Johnson assigns, restated and renumbered, that the district court erred in (1) applying Colorado law and (2) granting summary judgment on the issues of (a) UIM benefits, (b) PIP benefits, and (c) medical payments benefits.

## STANDARD OF REVIEW

When reviewing questions of law, an appellate court has an obligation to resolve the questions independently of the conclusion reached by the trial court. *Cave v. Resier*, 268 Neb. 539, 684 N.W.2d 580 (2004).

Summary judgment is proper when the pleadings and evidence admitted at the hearing disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Auto-Owners Ins. Co. v. Home Pride Cos.*, 268 Neb. 528, 684 N.W.2d 571 (2004). In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Id.*

## ANALYSIS

### CONFLICT OF LAW REGARDING UIM BENEFITS: APPLICATION OF TORT OR CONTRACT PRINCIPLES

Although recognizing that Johnson's claims against USF&G and EMC "arguably arise out of insurance contracts," the district court determined that under *Crossley, supra*, "the Nebraska Supreme Court has nevertheless held that Section 146 of the Restatement governs choice of law questions in actions for uninsured or UIM benefits." The Restatement (Second) of Conflict of Laws § 146 at 430 (1971) provides:

> In an action for a personal injury, the local law of the state where the injury occurred determines the rights and liabilities of the parties, unless, with respect to the particular issue, some other state has a more significant relationship under

the [general choice-of-law] principles stated in § 6 to the occurrence and the parties, in which event the local law of the other state will be applied.

Applying § 146, the court concluded that Colorado law governed Johnson's claim for UIM benefits.

Johnson argues that *Crossley v. Pacific Employers Ins. Co.*, 198 Neb. 26, 251 N.W.2d 383 (1977), is not controlling under these facts. Johnson contends that because insurance contracts are involved in this action, the conflict sounds in contract and should be resolved by applying the Restatement, *supra*, § 188(1) at 575 ("rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties"). We agree with Johnson.

When there are no factual disputes regarding state contacts, conflict-of-law issues present questions of law. See, *Malena v. Marriott International*, 264 Neb. 759, 651 N.W.2d 850 (2002); *Mertz v. Pharmacists Mut. Ins. Co.*, 261 Neb. 704, 625 N.W.2d 197 (2001); *Hughes Wood Products, Inc. v. Wagner*, 18 S.W.3d 202 (Tex. 2000) (stating that while which state's law governs issue is question of law, determining state contacts involves factual inquiry).

The first step in a conflict-of-law analysis is to determine whether there is an actual conflict between the legal rules of different states. See *Malena*, 264 Neb. at 762-63, 651 N.W.2d at 854 (" '[b]efore entangling itself in messy issues of conflict of laws a court ought to satisfy itself that there actually is a difference between the relevant laws of the different states' "), quoting *Barron v. Ford Motor Co. of Canada Ltd.*, 965 F.2d 195 (7th Cir. 1992). An actual conflict exists when a legal issue is resolved differently under the law of two states. See, *Nodak Mut. Ins. v. American Family Mut.*, 604 N.W.2d 91 (Minn. 2000); *Seizer v. Sessions*, 132 Wash. 2d 642, 940 P.2d 261 (1997).

The district court properly concluded that under Colorado law at the time of the accident, an insurer was liable for UIM benefits only when there was a "gap" between the moneys recovered from the person or organization legally liable and the limit of the insurer's UIM coverage. See Colo. Rev. Stat. Ann. § 10-4-609(5) (West 1990) (governing insurer's maximum UIM liability).

Because it was undisputed that Johnson had recovered $150,000 in liability benefits from Schultz' insurers and that the USF&G and EMC policies provided only $100,000 in UIM coverage, the court determined: "Whereas there is no 'gap' in this case . . . Johnson is precluded as a matter of Colorado law from recovering UIM benefits from either defendant."

In contrast, under Nebraska law since 1991, an insured is entitled to recover UIM benefits when there was a "gap" between the insured's *damages* and the moneys recovered from the person or organization legally liable, up to the limits of the UIM coverage provided. See 1990 Neb. Laws, L.B. 1136, § 124 (operative July 1, 1991), codified as Neb. Rev. Stat. § 44-6409 (Reissue 2004) (transferred from Neb. Rev. Stat. § 60-578 (Reissue 1993)). Thus, there is an actual conflict of law regarding the enforceability of the setoff provisions in these contracts. Having determined that an actual conflict exists, we next determine whether the choice-of-law rules for tort or contract govern the resolution of this conflict.

■ Actions for uninsured (UM) and UIM coverage can involve both tort and contract liability. See *Lee v. Saliga*, 179 W. Va. 762, 373 S.E.2d 345 (1988). Thus, in such actions, a court's second step is to classify the nature of the specific conflict issue: Does the conflict sound in tort or in contract? See, *Ohayon v. Safeco Ins. Co. of Ill.*, 91 Ohio St. 3d 474, 476, 747 N.E.2d 206, 208 (2001) ("[w]e must *classify* the [plaintiffs'] cause of action before we answer the choice-of-law question raised in their complaint because different choice-of-law rules apply depending on whether the cause of action sounds in *contract* or in *tort*"); *Buchanan v. Doe*, 246 Va. 67, 71, 431 S.E.2d 289, 291 (1993) ("forum state applies its own law to ascertain whether the issue is one of tort or contract"). See, also, Eugene F. Scoles et al., Conflict of Laws §§ 3.3 to 3.5 (4th ed. 2004) (discussing, generally, importance of initial subject matter characterization in conflict analysis).

■ "[I]t is well-settled Nebraska law that an insurance policy is a contract between the insurer and the insured, whose respective rights and obligations must be determined by application of contract principles." *Volquardson v. Hartford Ins. Co.*, 264 Neb. 337, 344, 647 N.W.2d 599, 606 (2002). See, also, *Schrader v. Farmers Mut. Ins. Co.*, 259 Neb. 87, 608 N.W.2d 194 (2000)

(holding that Neb. Rev. Stat. § 44-6413(1)(e) (Reissue 2004), barring actions for UM or UIM coverage when insured's underlying claim against tort-feasor expires, is inapplicable when insured timely files action against tort-feasor; in that circumstance, applicable statute of limitations on claim against insurer for UM or UIM benefits is statute governing actions on written contracts).

■ The right of an insured to recover benefits from his or her insurer requires a court to review the scope of the insurance contract as well as any statutes governing the contract provisions. See, e.g., *Hood v. AAA Motor Club Ins. Assn.*, 259 Neb. 63, 607 N.W.2d 814 (2000) (stating that provision drawn by insurer to comply with statutory requirements of UM or UIM coverage must be construed in light of purpose and policy of statute). Thus, we determine Johnson's action sounds in contract, not tort, "even though it is tortious conduct that triggers applicable contractual provisions." See *Ohayon*, 91 Ohio St. 3d at 480, 747 N.E.2d at 211. Accord, *Miller v. State Farm Mut. Auto. Ins. Co.*, 87 F.3d 822 (6th Cir. 1996) (rejecting executrix's argument that tort conflict-of-law provisions determined which state's law governed issue of whether insurer was required to provide per-person or per-accident UIM coverage and affirming district court's application of contract provisions); *Walker v. State Farm Mut. Auto. Ins. Co.*, 973 F.2d 634 (8th Cir. 1992) (applying conflict-of-law provisions for contract to determine which state's law governed insureds' right to stack UIM coverages); *Vaughan v. Nationwide Mut. Ins. Co.*, 702 A.2d 198 (D.C. App. 1997) (applying conflict-of-law provisions for contract to determine which state's law governed insurer's right to reduce UM coverage by money recovered from state disability plan); *Ryals v. State Farm Mut. Auto. Ins. Co.*, 134 Idaho 302, 1 P.3d 803 (2000) (applying conflict-of-law provisions for contract to determine which state's law governed interpretation of UM coverage provisions); *Lee v. Saliga*, 179 W. Va. 762, 766, 373 S.E.2d 345, 349 (1988) (noting that UM cases involve both contract and tort law, but that where question "involves an aspect of policy *coverage*, rather than *liability*, it is treated as a contract question for purposes of conflicts analysis").

The district court's determination that *Crossley v. Pacific Employers Ins. Co.*, 198 Neb. 26, 251 N.W.2d 383 (1977), controlled in this factual circumstance was error. In *Crossley*, the

Nebraska plaintiff suffered minor injuries in an automobile accident while in Colorado riding as a passenger in a vehicle driven by a Nebraska resident. A Colorado driver was "at fault" for the accident, but the plaintiff's medical costs and wage losses fell below the minimum liability threshold for asserting a tort claim against a Colorado driver insured under the Colorado Auto Accident Reparations Act. After the Colorado driver's insurer refused to pay personal injury damages to the plaintiff, he filed suit against his own insurer for UM benefits in the district court for Douglas County. The plaintiff's policy provided $10,000 in UM coverage for all sums to which the insured was " 'legally entitled to recover as damages from the owner or operator' " of a UM vehicle. 198 Neb. at 28, 251 N.W.2d at 385. The district court found that the Colorado vehicle was a UM vehicle as a matter of law, and the jury returned a verdict for the plaintiff.

On appeal, the plaintiff argued that he was entitled to recover if the Colorado driver would be liable under the tort law of Nebraska, but that in the alternative, if this court determined that Colorado law controlled, he should be allowed to recover UM benefits from his own insurer. In response, this court determined that under the Restatement (Second) of Conflict of Laws § 146 (1971), the law of the state where the accident occurred controls the right to recover and the amount of the recovery. *Crossley, supra.*

We reaffirm the holding in *Crossley* that under the Restatement, *supra*, § 146, Colorado's no-fault law governed the threshold issue of the tort-feasor's liability. As this court noted, "in virtually all instances where the conduct and the injury occur in the same state, that state has the dominant interest in regulating that conduct and in determining whether it is tortious in character, and whether the interest affected is entitled to legal protection." *Crossley*, 198 Neb. at 30, 251 N.W.2d at 386, citing Restatement, *supra*, § 146, comment *d*. See, also, *Malena v. Marriott International*, 264 Neb. 759, 651 N.W.2d 850 (2002) (recognizing foreign state's dominant interests in limiting less serious tort claims in order to protect claimants with more serious damages and to maintain low insurance premiums for its residents, when conduct and injury occurred in foreign state).

But this court's reliance on § 146 in *Crossley, supra*, should not be read as a determination that Colorado law governed the interpretation of a Nebraska contract. Rather, we stated:

[T]he plaintiff could only recover under his own uninsured motorist coverage any sums which the operator of the Colorado automobile would be legally responsible to pay to the plaintiff as damages, and that issue is determined under Colorado law. Uninsured motorist coverage is dependent upon legal liability on the part of the uninsured motorist to the insured for the personal injuries sustained. *The claimant must establish the liability of the uninsured motorist to him before he can recover.* . . . Whether the Colorado driver is regarded as an insured motorist or an uninsured motorist, there is simply no dispute that she is not legally liable to the plaintiff for his bodily injuries suffered in this accident.

(Emphasis supplied.) *Crossley v. Pacific Employers Ins. Co.*, 198 Neb. 26, 30, 251 N.W.2d 383, 386 (1977). Thus, our reliance on § 146 was simply a rejection of the plaintiff's contention that he was entitled to have the issue of the tort-feasor's underlying liability resolved under Nebraska's tort rules. Instead, we interpreted the insurance policy to require the insured to prove he or she could establish the tort-feasor's threshold liability under the law of the state where the accident occurred. See Eugene F. Scoles et al., Conflict of Laws § 17.56 (4th ed. 2004) (citing cases showing split of authority whether insureds must prove they are legally entitled to recover under law of state where policy was issued or state in which accident occurred, for purposes of UM or UIM coverage).

This application of *Crossley* is supported by cases from other jurisdictions cited in that opinion. See, *Bachman v. American Mutual Insurance Co. of Boston*, 338 F. Supp. 1372 (D. Kan. 1972) (concluding in action against decedent's insurer that plaintiff had failed to sustain his burden of showing uninsured motorist was liable for injuries to plaintiff's son); *Noland v. Farmers Insurance Exchange*, 413 S.W.2d 530, 533 (Mo. App. 1967) (holding that where Missouri insured was injured in Missouri when car in which she was riding was struck by separate uninsured vehicle driven by her husband and where Missouri law precluded wife from suing husband, insured was not entitled to UM

benefits because coverage was provided only when UM motorist was legally responsible for damages, noting that action against insurer "was upon contract (not tort), and that the terms of the contract govern").

This application of *Crossley, supra,* is also consistent with the language this court adopted in *Lane v. State Farm Mut. Auto. Ins. Co.,* 209 Neb. 396, 405, 308 N.W.2d 503, 509 (1981):

"We construe the words 'legally entitled to recover as damages' to mean simply that the insured must be able to establish fault on the part of the uninsured motorist which gives rise to the damages and to prove the extent of those damages. This would mean that in a direct action against the insurer *the insured has the burden of proving that the other motorist was uninsured, that the other motorist is legally liable for damage to the insured, and the amount of this liability. . . .*"

(Emphasis supplied.) Quoting *Winner v. Ratzlaff,* 211 Kan. 59, 505 P.2d 606 (1973).

We acknowledge that the *Crossley* analysis has led to some confusion as to whether this court applied tort or contract conflict-of-law provisions to determine which state's law controls the interpretation of an insurance contract. See *Lane, supra* (concluding that *Crossley, supra,* was inapplicable to issue of whether Nebraska insured was required to obtain judgment against Nebraska tort-feasor before proceeding against UM insurer because *Crossley* was decided under Colorado law and not Nebraska's UM statute). We take this opportunity, however, to clarify *Crossley.* In doing so, we decline to interpret *Crossley* as adopting the Restatement (Second) of Conflict of Laws § 146 (1971) to determine the governing state law for the interpretation or enforcement of a contract issued by a Nebraska insurer to a Nebraska insured when the issue does not involve the tort-feasor's threshold liability. Such interpretation would run counter to generally recognized conflict-of-law principles and perpetuate unnecessary confusion in our conflict-of-law jurisprudence.

The Ohio Supreme Court resolved an issue similar to the case now before this court and, in doing so, addressed similar confusion in Ohio's case law. *Ohayon v. Safeco Ins. Co. of Ill.,* 91 Ohio St. 3d 474, 747 N.E.2d 206 (2001). In *Ohayon,* the son of an Ohio

insured was struck by a car in Pennsylvania and settled with the tort-feasor for the limits of the tort-feasor's liability coverage. In an action brought in Ohio, the Ohio insureds argued that Pennsylvania's law controlled the issue of whether the insureds could stack their UIM coverage amounts for separate vehicles and whether their UIM insurer could limit its liability by the moneys recovered from the person or organization legally responsible. Pennsylvania law permitted stacking and prohibited the setoff provisions, but the insureds' policy, issued in Ohio, contained provisions barring stacking and permitting setoffs, consistent with Ohio's statutes. The trial court determined that the action was based on tort law and applied the Restatement's tort conflict-of-law provisions to determine that Pennsylvania law governed the coverage issue. See *Ohayon, supra.* The Ohio Ninth District Court of Appeals reversed, and the Ohio Supreme Court affirmed the Court of Appeals' decision.

The Ohio Supreme Court reasoned that a tort conflict-of-law analysis was appropriate where the issue was the measure of damages recoverable from the tort-feasor, but that "[t]he resolution of . . . stacking and setoff issues is a coverage issue, separate and independent from the measure of damages assessed to the tortfeasor." *Id.* at 482, 747 N.E.2d at 213. Similar to the confusion arguably created by this court's decision in *Crossley v. Pacific Employers Ins. Co.*, 198 Neb. 26, 251 N.W.2d 383 (1977), the Ohio Supreme Court had previously applied a tort conflict-of-law analysis in *Kurent v. Farmers Ins.*, 62 Ohio St. 3d 242, 581 N.E.2d 533 (1991), to determine whether the insured was legally entitled to recover from the tort-feasor pursuant to the foreign state's no-fault law. In *Ohayon, supra*, the court clarified that *Kurent* was not applicable to issues of coverage.

We agree with the reasoning in *Ohayon, supra*, and conclude that in applying *Crossley, supra*, the district court "confused the issue of a tort-feasor's liability to a plaintiff with the issue of an insurer's liability on its contract." See *Miller v. State Farm Mut. Auto. Ins. Co.*, 87 F.3d 822, 826 & n.1 (6th Cir. 1996) (discussing Ohio Supreme Court's decision in *Kurent, supra*, and concluding that in another case, Ohio's Seventh District Court of Appeals had misapplied *Kurent* by concluding it controlled in any claim against insurer for recovery of damages caused by third party).

The issue in *Crossley, supra*—whether, in the first instance, the insured was legally entitled to recover from the tort-feasor—is simply not before this court in Johnson's case. USF&G and EMC do not contend that the Colorado Auto Accident Reparations Act prevented Johnson from maintaining a tort action against Schulz, that it limited his recovery, or that Johnson failed to satisfy the minimum liability threshold for pursuing a tort action. See Colo. Rev. Stat. Ann. § 10-4-714 (West 1990). Compare *Malena v. Marriott International*, 264 Neb. 759, 651 N.W.2d 850 (2002) (reversing application of Nebraska law and determining that defendant was entitled to jury instruction based on California law that precluded plaintiff's recovery for parasitic damages for fear of developing illness in certain circumstances). The fact that Schulz' insurers paid the limits of their liability obligations demonstrates that Schulz' underlying tort liability was not at issue. Rather, the issue is the enforceability of the insurers' setoff provisions in their UIM coverages. We conclude that the record in this case limits the conflicts issue to coverage, which is governed by the Restatement's conflict-of-law provisions for contract. To the extent that *Crossley* can be interpreted as authorizing the application of the Restatement (Second) of Conflict of Laws § 146 (1971) to resolve a conflict limited to the issue of insurance coverage, not implicating threshold tort liability, it is hereby disapproved.

APPLICATION OF RESTATEMENT (SECOND) OF CONFLICT OF LAWS
§ 188 PRINCIPLES TO JOHNSON'S CASE

Johnson asserts that under the Restatement, *supra*, Nebraska has the most significant relationship to the insurance contracts in dispute and that Nebraska law should apply. USF&G and EMC argue that regardless of whether the conflict provisions for tort or contract are applied, Colorado has the most significant interest in applying its law to an accident which occurred in Colorado.

For the resolution of contract conflicts, this court has adopted the Restatement, *supra*, § 188. *Mertz v. Pharmacists Mut. Ins. Co.*, 261 Neb. 704, 625 N.W.2d 197 (2001), citing *Powell v. American Charter Fed. Sav. & Loan Assn.*, 245 Neb. 551, 514 N.W.2d 326 (1994). Section 188 at 575 provides:

(1) The rights and duties of the parties with respect to an issue in contract are determined by the local law of the state

which, with respect to that issue, has the most significant relationship to the transaction and the parties under the [general choice-of-law] principles stated in § 6.

(2) In the absence of an effective choice of law by the parties . . . the contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:

(a) the place of contracting,

(b) the place of negotiation of the contract,

(c) the place of performance,

(d) the location of the subject matter of the contract, and

(e) the domicil, residence, nationality, place of incorporation and place of business of the parties.

These contacts are to be evaluated according to their relative importance with respect to the particular issue.

In this case, it is undisputed that the insurance contracts in question were issued in Nebraska. The insured risks, the coverage limits, and the premium costs were all negotiated in Nebraska. The insured risk was principally located in this state. Johnson is a resident of this state, and USF&G and EMC were licensed to conduct insurance business in this state. Thus, the general contacts under § 188 unquestionably point to Nebraska contract law as controlling. In *Mertz*, we stated that "[w]hile § 188 sets out the general contacts to consider in contract cases involving conflict of law disputes, §§ 189 through 197 deal with conflict of laws disputes with regard to specific types of contracts." 261 Neb. at 709, 625 N.W.2d at 202. The Restatement, *supra*, § 193 at 610, addresses the issue of covered risks in an insurance policy:

The validity of a contract of fire, surety or casualty insurance and the rights created thereby are determined by the local law of the state which the parties understood was to be the principal location of the insured risk during the term of the policy, unless with respect to the particular issue, some other· state has a more significant relationship under the [general choice-of-law] principles stated in § 6 to the transaction and the parties, in which event the local law of the other state will be applied.

Comment *a.* clarifies that the law selected by application of § 193 "determines such questions as . . . what risks are covered by the

policy." *Id.* at 610. Comment *b.* provides that the principal location of the insured risk is the state "where it will be during at least the major portion of the insurance period." *Id.* at 611. Thus, regardless of whether the issue is analyzed under § 188 or § 193, Nebraska's law should govern what UM or UIM risks were covered by Johnson's insurance contracts unless Colorado has a more significant relationship to the parties and the transaction under the general choice-of-law principles stated in § 6 of the Restatement. See *Mertz, supra* (discussing presumption created by application of sections dealing with specific types of contracts).

The Restatement (Second) of Conflict of Laws § 6(2) at 10 (1971) provides that when there is no statutory provision directing a court's choice-of-law decision, the relevant factors include:

  (a) the needs of the interstate and international systems,

  (b) the relevant policies of the forum,

  (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

  (d) the protection of justified expectations,

  (e) the basic policies underlying the particular field of law,

  (f) certainty, predictability and uniformity of result, and

  (g) ease in the determination and application of the law to be applied.

Usually, when dealing with contract claims, the most compelling factor under § 6 is the protection of the parties' justified expectations. See, Restatement, *supra*, § 188, comment *b.*; Restatement, *supra*, § 193, comment *c.* at 612 ("location of the insured risk . . . has an intimate bearing upon the risk's nature and extent and is a factor upon which the terms and conditions of the policy will frequently depend"). Compare *Malena v. Marriott International*, 264 Neb. 759, 651 N.W.2d 850 (2002) (setting out most relevant principles under § 6 for tort claims). However, in a circumstance not implicating either a tort-feasor's threshold liability or the amount a tort victim can recover, and focusing only upon coverage based upon a contract entered into in Nebraska, this state would also have the most significant interest in applying its law when such law specifically prohibits the enforcement of a contract provision. See Restatement, *supra*, § 205, comment *c.* at 662 (explaining that even if application of rule defeats

expectations of parties to contract, state with "a local law rule which requires that the contract give rise to certain rights and duties or which provides that the parties may not limit the extent of their obligations by a certain provision" is likely to represent strongly felt policy under the principles stated in § 6). Compare *Mertz v. Pharmacists Mut. Ins. Co.,* 261 Neb. 704, 710, 625 N.W.2d 197, 204 (2001) ("Iowa's interest in protecting the expectations of the parties is outweighed by Nebraska's strong public policy considerations").

In 1990, the Nebraska Legislature amended its statutory formula for determining an insurer's maximum liability for UIM coverage to permit benefits to an insured when the tort-feasor is underinsured relative to the insured's actual damages. See 1990 Neb. Laws, L.B. 1136, § 124. The insurance contracts in this case were negotiated and issued after that amendment was enacted. Nebraska therefore has a significant interest not only in ensuring that its residents with UIM coverage are compensated for their injuries to the extent required by the governing statutes, but also in ensuring that policies issued in this state conform to those statutes.

We reject USF&G and EMC's arguments that the application of contract conflict-of-law principles leads to the determination that Colorado law would apply. We conclude that Colorado would not have a more significant relationship to this issue under the interests stated in the Restatement, *supra,* § 6, because the determination of a Nebraska resident's right to recover UIM benefits from a Nebraska insurer does not, under the record before us, impact Colorado residents or insurers, or the application of its no-fault rules, as they then existed. Finally, the application of Nebraska's laws to resolve the enforceability of contract coverage provisions between Nebraska insurers and insureds enhances the predictability of the parties' contractual rights and obligations by removing the constant variable of different states in which insureds travel. See *Vaughan v. Nationwide Mut. Ins. Co.,* 702 A.2d 198 (D.C. App. 1997).

## PIP BENEFITS

In contrast to the setoff provisions for UIM coverage, we determine that there is no conflict of law presented by the PIP

issue. The out-of-state coverage provisions of both the USF&G and EMC policies specified that the insurer would provide any coverage *"required of out-of-state vehicles by the jurisdiction where the covered 'auto' is being used."* (Emphasis supplied.) UIM coverage was required by both Nebraska and Colorado, and the coverage was provided in both policies. PIP coverage, however, was required only by Colorado law and was provided only as a result of the out-of-state coverage provisions. Thus, there is no conflict between Nebraska and Colorado laws regarding this coverage, and the coverage provided was entirely dependent upon the requirements of Colorado law. As such, the issue is simply an application of Colorado law as provided by the insurance contracts.

In applying Colorado law to Johnson's claim for PIP coverage, the district court determined that Johnson was not entitled to PIP benefits from EMC under the Colorado Auto Accident Reparations Act, see Colo. Rev. Stat. Ann. § 10-4-701 et seq. (West 1990 & Supp. 1999), as construed in *State Farm Mut. Auto. Ins. Co. v. Ketcham*, 849 P.2d 871 (Colo. App. 1994). Although the Colorado Legislature repealed the no-fault act, effective July 2001, see § 10-4-701 (West Supp. 1999), it was in effect at the time of this accident.

In 1993, the Colorado Auto Accident Reparations Act required every *owner* of a motor vehicle operated on the public highways of Colorado to have a complying policy in effect, which included mandatory PIP coverage. See §§ 10-4-705 to 10-4-707. As noted, the PIP coverage requirements extended to out-of-state policies while the covered vehicle was in Colorado. See § 10-4-711(4).

In *Ketchum*, the plaintiff was a California resident who was injured in Colorado while operating a Colorado resident's vehicle while his own vehicle remained in California. He sought PIP benefits from his insurer, which were denied. The Colorado Court of Appeals held that under § 10-4-711, an insurer was "not required to provide no-fault benefits under § 10-4-706 and § 10-4-707 to a nonresident whose insured vehicle is not located in Colorado at the time of the accident." *Ketchum*, 849 P.2d at 873.

We agree with the district court's application of *Ketchum*. Pursuant to *Ketchum*, only Brown, the owner of the automobile at the time of the accident, was required to have PIP coverage.

Brown's insurance provider, USF&G, in fact paid Johnson PIP benefits in accordance with its out-of-state policy provisions and Colorado law. As ·such, we find no merit to Johnson's argument that EMC was also required to provide him with PIP benefits.

### MEDICAL PAYMENTS BENEFITS

Finally, the court determined that Johnson was not entitled to medical payments benefits under his EMC policy because an exclusion precluded that coverage for an insured's bodily injury sustained " 'while working in a business of selling, servicing[,] repairing or parking 'autos' unless that business is yours.' " The court determined the language was unambiguous and found that Johnson was clearly working for Brown's business at the time of the accident.

In their briefs, the parties do not contend this issue would have been resolved differently depending upon whether Colorado or Nebraska law was applied or that an actual conflict exists. Rather, their arguments center upon the proper interpretation of the contract and whether that interpretation requires payment to Johnson under EMC's medical payments provisions. We therefore analyze the issue based upon the arguments in the parties' respective briefs.

The interpretation of a contract involves a question of law, in connection with which an appellate court has an obligation to reach its conclusions independently of the determinations made by the court below. *H & R Block Tax Servs. v. Circle A Enters., ante* p. 411, 693 N.W.2d 548 (2005).

Johnson argues that although he would not have gone to Denver but for Brown's request, once in Denver, Johnson was doing work for his own partnership business as well. While that may be the case, Johnson's evidence does not challenge the undisputed record establishing that at the time of the accident, Johnson was driving a vehicle owned by Brown from Colorado to Nebraska, the very service he had agreed to provide to Brown for a fee. Viewing the evidence in a light most favorable to Johnson and giving him the benefit of all reasonable inferences, we conclude that the district court did not err in determining as a matter of law that at the time of the accident, Johnson was in Brown's employ. The policy issued by EMC specifically

excluded coverage for medical payments under these facts. This assignment of error is without merit.

## CONCLUSION

For the reasons stated above, we affirm the district court's order granting summary judgment to USF&G and EMC on the issues of medical payments and PIP benefits. We reverse, however, that portion of the court's order granting summary judgment on the issue of UIM benefits and remand the cause to the district court for further action consistent with this opinion.

AFFIRMED IN PART, AND IN PART REVERSED
AND REMANDED WITH DIRECTIONS.