NATIONAL INDEPENDENT TRUCKERS INS. CO.,
Plaintiff,

v.

Kelly GADWAY and Bruce W. Larson, Defendants.

No. 8:10–CV–253.

United States District Court, D. Nebraska.

March 12, 2012.

Mary M. Schott, William H. Selde, Sodoro, Daly Law Firm, Omaha, NE, for Plaintiff.

Kelly Gadway, Omaha, NE, pro se.

Bruce W. Larson, Grand Island, NE, pro se.

## MEMORANDUM AND ORDER ON MOTIONS FOR SUMMARY JUDGMENT AND MOTION TO DISMISS COUNTERCLAIM

JOHN M. GERRARD, District Judge.

This matter is before the Court on three motions filed by the plaintiff, National Independent Truckers Ins. Co. (hereinafter, National): a motion for summary judgment as to one defendant, Bruce W. Larson (filing 85); a motion for summary judgment as to the other defendant, Kelly Gadway (filing 90); and a motion to dismiss Gadway's counterclaim (filing 53) with prejudice (filing 92). National's motions are denied as set forth in this memorandum and order.

## I. BACKGROUND

The underlying events of this case are essentially undisputed. Gadway, an over-the-road trucker, filed an application with National, a New Jersey insurance company, for commercial insurance coverage. *See* filing 1 at 1, filing 1–1. Gadway was the sole proprietor of his trucking operation, and Larson was his employee. *See,* filing 1 at 2; filing 1–2 at 26; filing 81–2 at 4; filing 95–3 at 9. The policy was to cover two Peterbilt tractors: one garaged in Hershey, Nebraska, where Gadway lived, and the other garaged in Tucson, Arizona, where Larson lived. *See* filing 1–1 at 5, 7. The drivers reported for the policy were Gadway and Larson. *See,* filing 1–1 at 7; filing 1–2 at 21.

A "Supplemental Questionnaire" attached to the policy instructed Gadway to list the date, place, driver, and description for "all accidents, regardless of fault, that occurred during the past 5 years involving the applicant and any person who will be listed as a driver." Filing 1–2 at 33. Gadway wrote "none" on the form, and signed and dated it on January 15, 2009. Filing 1–2 at 33.

Gadway had, however, been involved in an automobile accident in Ohio on September 2, 2008. *See* filing 95–5. The Toledo Police Division Traffic Crash Report establishes that Gadway's tractor-trailer had attempted a right turn from the center westbound lane of a five-lane divided street, despite being in a straight-only lane. *See* filing 95–5 at 3. Gadway's tractor-trailer struck a passenger vehicle that had been stopped in the right lane. *See* filing 95–5 at 3. Gadway was cited for a traffic violation. *See,* filing 95–4; filing 95–5 at 1; *see also, Toledo, Ohio Municipal Code* § 331.09(a) (2011); Ohio Revised Code § 4511.33 (2004). After initially failing to appear, Gadway pled guilty in Toledo Municipal Court on October 10 and was sentenced to fines and costs. *See* filing 95–4.

The evidence establishes that had National been informed of the Ohio accident, the policy for which Gadway applied would not have been issued. National's underwriting guidelines for the policy at issue provide that an applicant must have no at-fault accidents within the 3–year period preceding the application; if an accident is

listed on the applicant's driving record, a copy of the police report must be submitted. *See* filing 95–6 at 1. And Michael Poller, a principal in National, averred that had National been informed of the Toledo accident, it would not have issued the policy to Gadway. *See* filing 95–6.

Nonetheless, the policy was issued effective January 16, 2009. *See* filing 1–1 at 1. An MCS–90 endorsement was attached to the policy.[1] Larson was involved in a multiple-vehicle accident in Denton, Maryland on May 23. *See,* filing 81–2 at 4; filing 95–3 at 9. National canceled the policy on June 15. *See,* filing 1 at 3; filing 53 at 1. Then, National filed a complaint (filing 1) against Gadway and Larson in this court on July 8, 2010, seeking declaratory relief with respect to National's liability under the policy for the Maryland accident. Generally, National alleged that Gadway's failure to disclose the Ohio accident was a material misrepresentation entitling National to rescission of the policy, and sought a declaration that National has no duty to defend or indemnify the defendants for claims made against them relating to the Maryland accident. *See* filing 1.

Larson has made no appearance in this case, and Gadway is appearing *pro se.* As a result, the pleading and discovery stages of this proceeding have not passed without complication. As pertinent, Gadway filed a "Brief for Evidence" and "Supporting Brief" (filing 46) which were construed by the Magistrate Judge as Gadway's answer to the complaint. *See* filing 55. Gadway then filed a "Motion for Relief from Court Concerning Lack of Sufficient Premium Refund" (filing 53) which the Magistrate Judge construed as a counterclaim for refund of premiums paid before cancellation of the policy. *See* filing 55.

National served requests for admissions, pursuant to Fed. R. Civ. Pro. 36, on both Gadway and Larson. Larson did not respond. *See* filing 71–1. Gadway responded (filing 73), although he did not always clearly admit or deny the matters National asked him to admit; his responses can be fairly characterized as admitting most of the material facts that have been alleged, but offering his own interpretation of many of them. *See* filing 73. National moved the Court to deem each of its requests for admissions to have been admitted; the Magistrate Judge granted the motion with respect to Larson, but denied the motion with respect to Gadway. *See* filings 74 and 83.

Finally, National filed the motions for summary judgment and to dismiss counterclaim that are the subject of this memorandum and order. *See* filings 85, 90, and 92. Neither defendant filed a brief in opposition, so National's motions are now ripe for disposition.

## II. ANALYSIS

The Court's analysis begins with some well-established propositions. Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c)(2). The movant bears the initial responsibility of informing the Court of the basis for the motion, and must identify those portions of the record which the movant believes demonstrate the absence of a genuine issue of material fact. *Torgerson v. City of Rochester,* 643 F.3d 1031, 1042 (8th Cir.2011) (en banc). If the movant does so, the

---

1. An MCS–90 endorsement is one form of federally mandated proof of financial responsibility for interstate motor carriers. *See, generally, Carolina Cas. Ins. Co. v. Yeates,* 584 F.3d 868 (10th Cir.2009). Its importance in this case will be discussed in much greater detail below.

nonmovant must respond by submitting evidentiary materials that set out specific facts showing that there is a genuine issue for trial. *Id.*

On a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts. *Id.* Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the evidence are jury functions, not those of a judge. *Id.* But the nonmovant must do more than simply show that there is some metaphysical doubt as to the material facts. *Id.* In order to show that disputed facts are material, the party opposing summary judgment must cite to the relevant substantive law in identifying facts that might affect the outcome of the suit. *Quinn v. St. Louis County,* 653 F.3d 745, 751 (8th Cir. 2011). The mere existence of a scintilla of evidence in support of the nonmovant's position will be insufficient; there must be evidence on which the jury could conceivably find for the nonmovant. *Barber v. C1 Truck Driver Training, LLC,* 656 F.3d 782, 791–92 (8th Cir.2011). Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *Torgerson, supra,* 643 F.3d at 1042.

Rule 56 also allows the Court to grant summary judgment as to some issues but not as to others. *See* Fed.R.Civ.P. 56(a). Upon doing so, the Court may "enter an order stating any material fact—including an item of damages or other relief—that is not genuinely in dispute," and thereby treat such a fact "as established in the case." Fed.R.Civ.P. 56(g). And after giving notice and a reasonable time to respond, the Court may take other actions dictated by its findings—it may grant summary judgment for a nonmovant, grant the motion on grounds not raised by a party, or consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute. *See* Fed.R.Civ.P. 56(f).

### 1. MOTION FOR SUMMARY JUDGMENT AS TO GADWAY

■ The Court begins with National's motion for summary judgment as to Gadway, because that motion presents most of the substantive issues that will be important to disposing of National's other motions. This analysis is controlled by Nebraska's substantive law.[2] The initial question is whether, under Nebraska law, National is entitled to rescission of the policy. Beyond that, however, the questions are whether such rescission entitles National to disclaim liability for losses that had already occurred before the policy was cancelled, and what effect such rescission would have on the MCS–90 endorsement attached to the policy.

### (a) Rescission

■ Under Nebraska law, National's claim is for equitable rescission based upon fraud in the inducement. *See, generally, Gonzalez v. Union Pacific R.R. Co.,* 282 Neb. 47, 803 N.W.2d 424 (2011). Fraud in the inducement goes to the means used to induce a party to enter into a contract. The contract may be voidable if the party's consent was obtained by false representations—for instance, as to the nature and value of the consideration, or other materi-

---

**2.** The operative rule is that when neither party raises a conflict of law issue in a diversity case, the federal court simply applies the law of the state in which the federal court sits. *See BBSerCo, Inc. v. Metrix Co.,* 324 F.3d 955, 960 n. 3 (8th Cir.2003). In any event, despite connections to New Jersey, and not insubstantial connections to Arizona and Maryland, the principles of the Restatement (Second) of Conflict of Laws, adopted in Nebraska, would weigh in favor of Nebraska's contract law controlling here. *See, generally, Johnson v. U.S. Fid. and Guar. Co.,* 269 Neb. 731, 696 N.W.2d 431 (2005).

al matters. *Id.* at 442. But no oral or written misrepresentation made in the negotiation for a contract or policy of insurance by the insured, or in his behalf, shall be deemed material or defeat or avoid the policy, or prevent its attaching, unless any such misrepresentation or warranty deceived the company to its injury. Neb. Rev.Stat. § 44–358 (2010).

National relies upon the proposition that "[a] misrepresentation is material if the insurer would not have issued the policy had it been aware of the true facts." *Lowry v. State Farm Mut. Auto. Ins. Co.,* 228 Neb. 171, 421 N.W.2d 775, 778 (1988). But curiously, National does not cite the preceding sentence from Lowry, which provides that in order for an insurer to avoid liability on an insurance policy, "the insurer must plead and prove (1) that the misrepresentation was made knowingly with intent to deceive, (2) that the insurer relied and acted upon such statement, and (3) that the insurer was deceived to its injury." [3] *Id.* The Nebraska Supreme Court has, on several occasions, explained that § 44–358 requires an insurer to plead and prove a knowing intent to deceive. *See, e.g., Farm Bureau Life Ins. Co. v. Luebbe,* 218 Neb. 694, 358 N.W.2d 754 (1984); *White v. Medico Life Ins. Co.,* 212 Neb. 901, 327 N.W.2d 606 (1982); *Zimmerman v. Continental Cas. Co.,* 181 Neb. 654, 150 N.W.2d 268 (1967). The Nebraska Supreme Court has also explained that an insurer's common-law right to rescission is subject to the limitations imposed by § 44–358, *see Glockel v. State Farm Mut. Auto. Ins. Co.,* 224 Neb. 598, 400 N.W.2d 250 (1987), and that these statutory requirements are read into and constitute a part of insurance contracts. *See, Ohio Cas. Co. of Hamilton, Ohio v. Swan,* 89 F.2d 719 (8th Cir.1937); *Travelers Indem. Co. v.*

*International Nutrition, Inc.,* 273 Neb. 943, 734 N.W.2d 719 (2007); *Mayfield v. North River Ins. Co. of New York,* 122 Neb. 63, 239 N.W. 197 (1931).

█ The evidence presented establishes, as a matter of law, that the misrepresentation in this case was material—that is, that National relied and acted upon Gadway's misrepresentation, and was deceived to its injury. But the evidence does not establish, as a matter of law, that Gadway made the misrepresentation knowingly with intent to deceive. In his "answer," Gadway alleged that he had not disclosed the Ohio accident because his "agent at the time said it was a 'non-event'" and it "never crossed [his] mind again until after 8–16–10 when lawyers were contacting me...." Filing 46. He further explained his failure to disclose the Ohio accident in his response to National's requests for admissions, which National has submitted as evidence supporting its motion for summary judgment. *See* filing 95. Generally, Gadway explained that he did not believe the Ohio accident was his fault, and that the other driver was responsible and trying to "scam" his insurance company. *See* filing 95–3. He denied that he "lied" on the application for the policy, accusing the other driver in the Ohio accident of trying to "totally screw the insurance company in spite of all the facts." Filing 95–3 at 6.

Granted, the questionnaire on which Gadway failed to report the Ohio accident asked for "all accidents, regardless of fault, that occurred during the past 5 years...." Filing 95–2. Had Gadway answered the question *accurately,* he would have disclosed the Ohio accident. But the evidence does not negate the possibility that Gadway misunderstood the requirements of the questionnaire. And the Ne-

---

**3.** The proposition in *Lowry, supra* is framed in terms of an insurer's "defense to an action on a contract of insurance," *id.* at 778, but National's declaratory judgment claim in this case is essentially an anticipatory defense to a claim on the policy.

braska Supreme Court has set the bar high for a knowing, intentional deception of an insurer. In *Lowry, supra,* an applicant for insurance was asked whether, during the previous 5 years, his license had been suspended or revoked, or whether he had been fined or convicted for traffic violations. The applicant reported a speeding violation, and the insurer immediately bound coverage. The applicant was killed in a car accident 6 days later. But the applicant, contrary to his disclosure, had been convicted of two speeding violations, a stop sign violation, and driving while intoxicated; his license had been suspended for 60 days as a result of the DWI. The applicant's widow sued to obtain insurance coverage, but the trial court entered summary judgment for the insurer. *See id.*

The Nebraska Supreme Court identified the crucial question as "whether it can be said as a matter of law that decedent concealed these facts knowingly and with the intent to deceive." *Id.* at 779. The Court emphasized that "when 'an applicant makes an untrue statement with respect to a material fact peculiarly within his knowledge, the finder of fact may, from the mere occurrence of the false statement, conclude it was made knowingly with intent to deceive.'" *Id.* (emphasis in original). But, the Court explained,

> Plaintiff's suggestion that decedent did not remember that he was convicted of driving while intoxicated and deprived of his driver's license as a consequence, and did not understand that such events fell within the ambit of the questions asked in the application, stretches the limits of credulity ... Nonetheless, it cannot be said as a matter of law that decedent had the requisite recollection and understanding; the circumstances make the matter a question for the trier

of fact. Accordingly, the summary judgment ... must be reversed.

*Id.*

Likewise, in this case, the Court finds it difficult to believe Gadway was unaware that by not disclosing the Ohio accident, he was withholding information that fell within the scope of National's questionnaire. It would be interesting to know why Gadway had apparently decided to change insurance companies just a few months after the Ohio accident. But the Court is bound by Nebraska law on this issue, and given Lowry, the Court's skepticism does not permit it to conclude, as a matter of law, that Gadway acted knowingly with intent to deceive National. Questions of subjective intent can rarely be decided by summary judgment. *See Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). In this case, Gadway's intent presents a genuine issue of material fact that precludes summary judgment.

### (b) Minimum Required Coverage and Public Policy

■ Regardless of whether National might be able to rescind the policy, there is also a question presented as to whether National can avoid liability for an already-incurred loss—most pertinently, the Maryland accident. It is well recognized by courts to have confronted the question that where motor vehicle insurance is compulsory, statutorily required coverage cannot be rescinded ab initio after an injury has occurred. *See, e.g., Palisades Safety & Ins. Ass'n v. Bastien,* 175 N.J. 144, 814 A.2d 619 (2003); *Harkrider v. Posey,* 24 P.3d 821 (Okla.2000); *Progressive Northern Ins. Co. v. Corder,* 15 S.W.3d 381 (Ky.2000); *Munroe v. Great American Ins. Co.,* 234 Conn. 182, 661 A.2d 581 (1995); *Van Horn v. Atlantic Mut. Ins. Co.,* 334 Md. 669, 641 A.2d 195 (1994); *Continental Western Ins. Co. v. Clay,* 248

Kan. 889, 811 P.2d 1202 (1991); *Ferguson v. Employers Mut. Cas. Co.,* 254 S.C. 235, 174 S.E.2d 768 (1970); *Nationwide Mut. Ins. Co. v. Roberts,* 261 N.C. 285, 134 S.E.2d 654 (1964); *see generally* C.C. Marvel, Annotation, *Rescission or Avoidance, for Fraud or Misrepresentation, of Compulsory, Financial Responsibility, or Assigned Risk Automobile Insurance,* 83 A.L.R.2d 1104 (1962 & Supp.2011).

Generally, these courts have reasoned that compulsory insurance schemes were enacted to protect innocent members of the public from uninsured drivers, transforming what had been a private insurance arrangement into "a quasi-public obligation." *Harkrider, supra,* at 830; *see, e.g., Bastien, supra; Corder, supra; Van Horn, supra; Munroe, supra.* Although many of those cases arise out of different statutory enactments, they reflect the common policy of providing financial protection for those injured in automobile accidents. *Munroe, supra.* Permitting post-loss rescission of statutorily required coverage, however, would thwart the statutory protection afforded to innocent third parties. *See, Harkrider, supra; Corder, supra.* Therefore, it has been held that where a loss must be borne by an innocent third party or by an insurance company which has written a policy pursuant to a compulsory insurance statute, it should be the insurance company that bears the loss up to the minimum statutory limits. *See id.*

The Nebraska Supreme Court has not directly confronted that issue. *See Glockel, supra* (noting but avoiding issue). Nonetheless, Nebraska has a compulsory insurance scheme, *see* Neb.Rev.Stat. §§ 60–310 and 60–387 (2010), and the Court has little doubt that were the Nebraska Supreme

Court to directly confront the issue, it would likewise conclude that statutorily required automobile insurance coverage cannot be voided ab initio when an innocent third party has already been injured. *See State Farm Mut. Auto. Ins. Co. v. Armstrong,* 949 F.2d 99 (3d Cir.1991) (explaining duty to predict state court's resolution of issue and deciding Pennsylvania would reject common-law right to rescind compulsory automobile insurance); *cf. Scow v. Bankers' Fire Ins. Co.,* 109 Neb. 241, 190 N.W. 858 (1922) (recognizing, in dicta, proposition that rescission will not be granted when the rights of third parties have intervened). Thus, the Court finds no merit to National's request for a declaration that the policy is void *ab initio,* and that there is no insurance coverage under the policy for the Maryland accident. Given the public policy determination reflected by the Nebraska statutes, the Court concludes that the policy is effective, as to existing losses, up to the statutorily required minimum coverage.[4]

#### (c) MCS–90 Endorsement

National's request for a declaration that it is not obligated to make payment of any settlement or judgment entered against the defendants also implicates the validity of the MCS–90 endorsement attached to the policy. The operation and effect of the MCS–90 endorsement is a matter of federal law. *See, Canal Ins. Co. v. Distrib. Servs., Inc.,* 320 F.3d 488 (4th Cir.2003); *Great West Cas. Co. v. General Cas. Co. of Wisconsin,* 734 F.Supp.2d 718 (D.Minn. 2010).

Federal law provides that the Secretary of Transportation may register a motor carrier only if the registrant files a bond,

---

4. The relevant statutory minimums are those provided by § 60–310—it does not appear that Maryland's compulsory financial responsibility requirements apply to vehicles not reg-

istered in Maryland. *See Md.Code Ann., Transportation § 17–104 (West, Westlaw through 2011 legislation).*

insurance policy, or other type of security approved by the Secretary. 49 U.S.C. § 13906. A commercial motor carrier may operate only if registered to do so, and must be willing and able to comply with minimum financial security requirements. *See,* 49 U.S.C. § 13901; *Yeates, supra.* This requirement, and the regulations promulgated by the Federal Motor Carrier Safety Administration, require interstate motor carriers to obtain a special endorsement providing that the insurer will pay within policy limits any judgment recovered against the insured motor carrier for liability resulting from the carrier's negligence. *Yeates, supra.* An MCS–90 endorsement is one of the three acceptable methods for proving financial responsibility. *See* 49 C.F.R. § 387.7(d).

■ It is generally established that an MCS–90 endorsement operates as a surety, rather than a modification of the underlying policy. *See, Yeates, supra; Great West Cas. Co., supra.* In other words, the endorsement is a safety net in the event other insurance is lacking. *See, Yeates, supra; Great West Cas. Co., supra.* An MCS–90 insurer's duty to pay a judgment arises not from any insurance obligation, but from the endorsement's language guaranteeing a source of recovery in the event the motor carrier negligently injures a member of the public on the highways. *Yeates, supra.*

■ Significantly, the MCS–90 endorsement, and any of its terms that supersede any limitation in the underlying insurance policy, are implicated only as between a member of the public and the insurer. *See id.* The "peculiar nature" of the MCS–90 endorsement grants a creditor the right to demand payment from the insurer, and simultaneously grants the insurer the right to demand reimbursement from the insured. *Canal Ins. Co. v. Underwriters at Lloyd's London,* 435 F.3d 431, 442 n. 4 (3d Cir.2006); *accord Yeates, supra.*

National alleges that the MCS–90 endorsement attached to the policy is ineffective because it provides coverage for "the insured." According to National, because the policy should be voided, there is no "insured" and the MCS–90 endorsement is also void. But National's argument is inconsistent with the purpose of the MCS–90 endorsement and express provisions of federal law. To begin with, the MCS–90 endorsement specifically identifies Gadway as the person to whom the endorsement was issued. *See* filing 1–2 at 16. And operation of an MCS–90 endorsement does not rest on the underlying insurance policy—it is, in fact, well understood that the MCS–90 endorsement is not triggered *unless* the underlying policy does not provide liability coverage for an accident. *See Yeates, supra.* The MCS–90 expressly provides that "no condition, provision, stipulation, or limitation contained in the policy, this endorsement, or any other endorsement thereon, or violation thereof, shall relieve the company from liability or from the payment of any final judgment...." Filing 1–2 at 16; *see* 49 C.F.R. § 387.15, *Illustration I.*

■ And because the MCS–90 defines "the insurer's *public financial responsibility* obligation," *Yeates, supra,* at 884 (*emphasis in original*), an MCS–90 endorsement remains in effect until the insurance company terminates the endorsement in the manner provided by federal law. *See, Waters v. Miller,* 564 F.3d 1355 (11th Cir. 2009); *Republic Western Ins. Co. v. Rockmore,* 2005 WL 57284 (N.D.Tex. Jan. 10, 2005). The purpose of requiring an MCS–90 certification, or other proof of financial responsibility, is to ensure that the public is adequately protected from the risks created by a motor carrier's operations and to ensure the collectability of a judgment against the motor carrier. *Great West Cas. Co., supra.* To that end, the Federal

Motor Carrier Safety Administration must be notified of the cancellation or withdrawal of an MCS–90 endorsement, and the endorsement remains in effect until 30 days after such notice is given. *See* 49 C.F.R. § 387.313(d); *see also, Waters, supra; Rockmore, supra.*

As with the state compulsory financial responsibility schemes discussed above, it would defeat the purpose of the federal statutes and regulations at issue if an insurer could escape its obligations pursuant to an MCS–90 endorsement simply by seeking rescission of the underlying insurance policy. The Court concludes that as to injured members of the public, the MCS–90 endorsement attached to the policy remains in effect at least until the notice requirement of 49 C.F.R. § 387.313(d) has been satisfied. And in this case, there is no evidence of when, if at all, such notice was given. Therefore, National is not entitled to a declaration that coverage is unavailable under the MCS–90 endorsement.

### (d) Conclusion on Motion for Summary Judgment as to Gadway

For the foregoing reasons, National's motion for summary judgment as to Gadway (filing 90) is denied. Further findings with respect to the issues discussed above will be set forth later in this memorandum and order.

### 2. MOTION FOR SUMMARY JUDGMENT AS TO LARSON

■ With respect to the substantive legal issues—rescission, compulsory insurance, and the MCS–90 endorsement—Larson's legal position with respect to the accident is mostly indistinguishable from Gadway's. In fact, Gadway's liability for the Maryland accident, if any, is almost certain to be based on the doctrine of *respondeat superior,* which allows an employer to be held vicariously liable for the tortious conduct of its employee when that employee was acting within the scope of the employment relationship.[5] *See Oaks v. Connors,* 339 Md. 24, 660 A.2d 423 (1995).

■ The important procedural difference arises from the fact that Gadway responded to National's requests for admissions, while Larson did not. Therefore, as discussed above, National's requests for admissions have been deemed admitted as to Larson. These admissions include that "Gadway lied on the application" for the policy, that Gadway "fraudulently filled out the application," that "every statement or allegation contained in [National's] Petition is true and correct," and that "Larson has no defense at law or in equity to the claims made by [National] herein." Filing 81–3.

■ Taken on their face, these admissions would essentially concede National's case. Fed.R.Civ.P. 36(a)(1) permits a party to serve a request to admit "facts, the application of law to fact, or opinions about either." And a matter admitted under Rule 36 is conclusively established unless withdrawn or amended. *See* Fed.R.Civ.P. 36(b). But the rule does not authorize requests for admissions of law unrelated to the facts of the case. *See* Fed.R.Civ.P. 36 *advisory committee's note.*

The complication is that to the extent that National is seeking rescission of the policy, that claim for relief does not lie against Larson, for the obvious reason that Larson wasn't a party to the contract. The policy is either rescinded as to its actual parties, or it isn't. But if Gadway

---

**5.** There is always the possibility that a suit arising out of the Maryland accident could be based in some other legal theory, such as negligent hiring or supervision. But that is highly unlikely, given that a plaintiff would almost certainly have to establish the elements of *respondeat superior* as part of a claim based on any other theory.

defeats National's rescission claim by proving, for instance, that he did not "lie" on or "fraudulently" fill out the application, it is difficult to see how the Court could reach a sensible or consistent resolution on rescission by trying to parse out rescission as to Larson, but not Gadway. The Court cannot simultaneously validate and invalidate the same contract.

Nor can the Court accept that the broad admissions proffered by National are fatal to all of the defenses to its claim for relief. As noted above, a proper request for admission does not authorize admissions of law unrelated to the facts of the case. And it is unclear, for instance, whether the admission that "Larson has no defense at law or in equity" encompasses factual or legal admissions. The basic facts of the case—who did what, and when—are essentially undisputed, and no admissions are necessary to establish those facts. The Court's determination of the issues discussed above—the state-law compulsory insurance requirement and federal MCS-90 endorsement—rests on legal conclusions that Larson cannot be compelled to admit, even by failing to respond.

The Court recognizes that if facts admitted under Fed.R.Civ.P. 36 are dispositive of the case, then it is proper to grant summary judgment. *See, Praetorian Ins. Co. v. Site Inspection, LLC,* 604 F.3d 509 (8th Cir.2010); *Quasius v. Schwan Food Co.,* 596 F.3d 947 (8th Cir.2010). But the Court cannot find Larson's admissions to be dispositive here, under the facts of this case. Larson cannot be deemed to have admitted legal conclusions that contradict the conclusions of the Court which, as explained above, preclude summary judgment in National's favor. Nor can Larson's factual admissions with respect to Gadway's misrepresentation be dispositive of National's claim for rescission when Larson was not a party to the policy, and he cannot be sued for rescission.

In all other respects, National's arguments for summary judgment as to Larson are without merit for the same reasons they were without merit as to Gadway. Therefore, National's motion for summary judgment as to Larson (filing 85) is also denied.

### 3. MOTION TO DISMISS COUNTERCLAIM

■ Finally, the Court denies National's motion to dismiss Gadway's counterclaim (filing 92). Although captioned as a "Motion to Dismiss with Prejudice," National's motion can more accurately be characterized as an offer to confess judgment on the counterclaim should judgment be rendered in National's favor on its own claims for relief. In its motion, National states that it is "able and willing to tender payment to Gadway in full satisfaction of this 'Counterclaim' upon entry of Judgment by the Court." *See* filing 92 at 1. Essentially, National's motion is a concession that if the policy is rescinded, and voided *ab initio,* then National would owe Gadway a full refund of premiums paid, plus interest.

But as discussed above, National has not yet proven that the policy should be rescinded. Nor has National shown that it can completely escape liability for the Maryland accident even if the policy is rescinded. The Court does not hold National to its concession of the counterclaim in light of these conclusions, because the Court reads National's concession as conditioned upon a complete rescission and discharge of liability.

■ And furthermore, even if the policy is rescinded, there remains an issue of material fact as to the amount Gadway should be refunded. Under Nebraska law, refund of consideration upon rescission of a contract is based upon liability for money had and received, *see Gonzalez, supra,* and an action in assumpsit for money had and received may be brought where a party

has received money that in equity and good conscience should be repaid to another. *In re Margaret Mastny Revocable Trust*, 281 Neb. 188, 794 N.W.2d 700 (2011). In such a circumstance, the law implies a promise on the part of the person who received the money to reimburse the payor in order to prevent unjust enrichment. *Id.*

In order to maintain such an action, a plaintiff (in this case, a counter-claimant) must show that (1) the defendant received money, (2) the defendant retained possession of the money, and (3) the defendant in justice and fairness ought to pay the money to the plaintiff. *Id.* Given the possibility that rescission of the policy would not discharge National's liability for the Maryland accident, the Court finds that there is a genuine issue of material fact as to how much of the premiums paid on the policy ought to be, "in justice and fairness," repaid to him. *See id.* at 712. As such, the Court denies filing 92, National's motion to dismiss the counterclaim.

## III. FINDINGS AND CONCLUSIONS

For the reasons stated above, the Court denies each of National's pending motions. As pertinent, the Court finds that summary judgment is precluded by the following genuine issues of material fact, as explained in more detail above:

1. Whether Gadway's failure to disclose the Ohio accident when applying for the policy was made knowingly with intent to deceive National; and
2. How much of Gadway's nonrefunded premiums ought to be repaid to him.

Fed.R.Civ.P. 56(g) provides that if a court does not grant all the relief requested by a motion for summary judgment, it may enter an order stating any material fact that is not genuinely in dispute and treating the fact as established in the case. As explained in more detail above, the Court finds that the following material facts are not genuinely in dispute:

1. Gadway's failure to disclose the Ohio accident was a material misrepresentation, in that National (a) relied and acted upon Gadway's misrepresentation, and (b) was deceived to its injury.

Furthermore, Fed.R.Civ.P. 56(f) provides that after giving notice and a reasonable time to respond, a court may grant summary judgment for a nonmovant, and consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute. Given the Court's legal conclusions, explained above, it appears to the Court that summary judgment against National might be appropriate with respect to its liability for the insurance coverage required by Nebraska's compulsory insurance scheme, and with respect to National's liability under the MCS–90 endorsement.

IT IS ORDERED:

1. National shall show cause, by an appropriate brief in opposition (and index in opposition, if need be) why the Court should not on its own motion enter a partial summary judgment against National declaring, based on the reasoning set forth above, that
   (a) National may not rescind the policy insofar as it provided compulsory insurance coverage required by Nebraska law, and
   (b) National may not (and did not) avoid liability under the MCS–90 endorsement before providing the notice required by federal law.
2. The parties shall proceed pursuant to NECivR 7.0.1(b) as if a motion for partial summary judgment to that effect had been filed as of the date of this memorandum and order—that is, National shall file a brief in opposition

on or before April 6, 2012, and the defendants may file reply briefs on or before April 17, 2012, after which the Court will consider the matter ripe for disposition.

3. The Clerk of the Court is directed to make an appropriate entry in the Court's electronic case management system to show on the Court's motion list that responses to an order to show cause are pending and that the above-stated briefing dates have been established.